## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| SCOMA CHIROPRACTIC, P.A. a Florida corporation, FLORENCE MUSSAT, M.D., S.C., an Illinois service corporation, and DR. WILLIAM P. GRESS, an Illinois resident, individually and as the representatives of a class of similarly-situated persons, , <br><br>  Plaintiff, <br><br> v. <br><br> DENTAL EQUITIES, LLC, FIRST ARKANSAS BANK & TRUST, MASTERCARD INTERNATIONAL INCORPORATED, a Delaware corporation, and JOHN DOES 1-10, <br><br>  Defendants. | )<br>)<br>)<br>)<br>)   Civil Action No.: 2:16-CV000041<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFFS' OPPOSITION TO DEFENDANT FIRST ARKANSAS'S MOTION TO STAY PENDING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT IN CASE PENDING IN THE EASTERN DISTRICT OF ARKANSAS

Plaintiffs Scoma Chiropractic, P.A., Florence Mussat, M.D., S.C., and William P. Gress ("Plaintiffs") respond as follows to Defendant First Arkansas Bank & Trust ("First Arkansas") Motion to Stay the proceedings in this matter pending approval of a class action settlement agreement ("Settlement Agreement") reached between First Arkansas and the plaintiff in *Davis Neurology, P.A. v. Dental Equities, LLC*, Case No. 4:16-cv-00371-BSM (E.D. Ark.) ("*Davis* Action"), based (to date) on the same fax advertisements at issue in this case (the "*Scoma* Action"). (Doc. 58).  As argued below, the Motion to Stay should be denied because (1) not all defendants in the *Scoma* Action, notably, MasterCard, have moved to stay and therefore approval of the *Davis* Action Settlement Agreement would not resolve the *Scoma* Action; (2) the proposed *Davis* Action

Settlement Agreement has not been preliminarily approved, and there is currently pending in the *Davis* Action a motion to intervene, a motion to dismiss, and an objection to preliminary approval of the proposed Settlement Agreement; (3) the *Scoma* Action Plaintiffs would be unfairly prejudiced if a stay is entered because (i) the proposed Settlement Agreement is grossly unfair as it settles a case worth $190,332,500 (380,665 faxes successfully transmitted x $500 per fax) for $1,525,000, or .8% of its value; (ii) the release in the proposed Settlement Agreement is wildly overbroad; (iii) the Settlement Agreement has the earmarks of a "reverse auction"; and (4) a stay would prejudice the *Scoma* Plaintiffs and First Arkansas has failed to establish a "clear case of hardship or inequity" in going forward.

### Background

**The *Scoma* Action.**  The pending "*Scoma* Action" is the combination of three cases based on the identical junk faxing by Defendants Dental Equities, First Arkansas, and MasterCard – the *Mussat* Action, filed by Florence Mussat in the Northern District of Illinois on January 7, 2016, the *Scoma* Action, filed in this Court on January 25, 2016, and the *Gress* Action, filed by Dr. William Gress in the Northern District of Illinois on January 28, 2016. On February 4, 2016, Mussat filed an MDL Petition, MDL No. 16-8, seeking transfer of all cases to the Northern District of Illinois.  While the MDL Petition was pending, counsel for Scoma, Gress, and Massat agreed to coordinate their litigation efforts in this Court and thereafter, both Mussat and Gress dismissed their lawsuits without prejudice.

From the outset, the *Scoma* Action has been heavily litigated.  Following the filing of Scoma's First Amended Complaint on February 24, 2016, which added First Arkansas as a Defendant (*see* Doc. 8 ¶ 10), the following has occurred:

- **March 2, 2016** – Court grants *pro hac vice* motion of attorney Lewis S. Weiner as co-counsel for First Arkansas (the same attorney in the *Davis* Action) (Doc. 15)

- **March 18, 2016** -- First Arkansas files a motion to stay based on the Supreme Court's decision in *Spokeo v. Robins* (Doc. 22)

- **March 23, 2016** -- Plaintiff files motion for leave to file a Second Amended Complaint ("SAC") seeking to add Mussat and Gress as additional Plaintiffs (Doc. 23)

- **March 23, 2016** -- Plaintiff files a "placeholder" motion for class certification (Doc. 24)

- **April 1, 2016** – Plaintiff files response to First Arkansas's motion to stay based on *Spokeo v. Robins* (Doc. 25)

- **April 11, 2016** – First Arkansas files opposition to Plaintiff's motion for leave to file SAC (Doc. 29)

- **April 11, 2016** – First Arkansas files opposition to Plaintiff's placeholder motion for class certification (Doc. 31)

- **April 11, 2016** – Parties submit Case Management Report (Doc. 30)

- **April 12, 2016** – Plaintiff moves for entry of default against Defendant Dental Equities for failure to respond to complaint (Doc. 32)

- **April 19, 2016** – Court enters Case Management Order (Doc. 33)

- **April 21, 2016** – Defendant Dental Equities produces flash drive containing documents

- **April 25, 2016** – Plaintiff serves subpoena on fax broadcaster j2 Global seeking fax transmission logs for faxes in issue

- **April 29, 2016** – Plaintiff's motion for leave to file SAC granted (Doc. 37)

- **May 3, 2016** – Default entered against Defendant Dental Equities (Doc. 40, 41).

- **May 9, 2016** – First Arkansas files motion to dismiss and second motion to stay (Doc. 42)

- **May 18, 2016** – First Arkansas's first motion to stay denied (Doc. 43)

- **May 20, 2016** – j2 Global produces electronic data in response to subpoena containing fax transmission logs.

- **May 31, 2016** – Court enters Agreed Confidentiality Order (Doc. 48)

- **June 6, 2016** – Plaintiffs (Scoma, Mussat, Gress) file response to First Arkansas motion to dismiss SAC and second motion to stay (Doc. 49)

- **June 9, 2016** -- Plaintiffs serve interrogatories, requests to produce, and requests to admit on First Arkansas

- **June 13, 2016** – First Arkansas files motion for leave to file reply in support of motion to dismiss SAC and second motion to stay (Doc. 50).

- **June 16, 2016** – First Arkansas files reply in support of motion to dismiss SAC and second motion to stay (Doc 51, 52)

- **July 20, 2016** – Plaintiffs serve expert report of Robert Biggerstaff

  o Biggerstaff concludes that the 1-page fax at issue was fully received error-free by **380,665** unique fax numbers between December 18 and December 23, 2015. (Biggerstaff Report, relevant portions attached hereto as Exhibit 1 (w/o exhibits).

- **July 20, 2016** – First Arkansas serves responses to Plaintiffs' written discovery (First Arkansas responses to Plaintiff's first set of interrogatories, first requests for production of documents, and first requests for admissions, attached as Exhibits 2, 3, and 4, respectively)

- **August 16, 2016** – Kiamor Shahohammadi ("Dr. Shah"), is presented as a Rule 30(b)(6) witness for Defendant Dental Equities (of which he is sole owner), deposed in *Scoma* Action.  Among other things, Dr. Shah testifies that Defendant Mastercard paid for and that First Arkansas approved the fax advertising at issue, that Dental Equities obtained the fax number targets for its fax advertising from a third party data vendor, that Dental Equities did not have prior express invitation or permission from the targets of the fax advertising.  (Relevant portions of Dr. Shah's deposition attached as Exhibit 5, *see infra*).

- **September 23, 2016** – Plaintiffs granted leave to file third amended complaint ("TAC"), adding MasterCard as Defendant (Doc. 54, 55).

- **September 26, 2016** – First Arkansas produces documents Bates'-stamped FABT 1 to FABT 1516

- **October 11, 2016** – First Arkansas files (third) Motion to Stay or, in the Alternative, an extension of time to answer or otherwise plead (Doc. 58)

- **October 14, 2016** – MasterCard's motion for extension of time to answer or otherwise plead granted  (Doc. 60)

  **The *Davis* Action**.  The *Davis* Action was originally filed in the Circuit Court of Pope

County, Arkansas on January 15, 2016, by Davis Neurology against Dental Equities and Dr. Shah.

(*See Davis* Action, Doc. 1).  On February 17, 2016, the Circuit Court of Pope County entered an

order of voluntary dismissal of Dr. Shah.  (*Id*. at 36).   As a condition of the dismissal, Dr. Shah agreed to furnish information regarding the fax advertising at issue, including the identity of all individuals and entities involved, any agreements regarding the faxing, and any information regarding where the fax numbers were sent.  (Doc. 58-3, Page ID 692).  On May 12, 2016, one hundred and five days after it was named as a defendant in the *Gress* Action, and seventy-seven days after it was named as a defendant in the *Scoma* Action, Plaintiff in the *Davis* Action filed a First Amended Complaint, naming First Arkansas as a defendant.  (*Id*.)  On May 13, 2016, plaintiff in the *Davis* Action filed a Second Amended Complaint.  (*Id*.)

On June 14, 2016, the *Davis* Action was removed to the Eastern District of Arkansas by First Arkansas.  (A copy of the court docket for the *Davis* Action is attached hereto as Exhibit 6).  The federal docket reveals essentially no action save several agreed motions for extension of time to answer or otherwise plead by First Arkansas, and the granting of attorney Lewis Wiener's motion to appear *pro hac vice* (the same attorney representing First Arkansas in the *Scoma* Action).  (*See Davis* Action Docket, attached as Exhibit 6, at Nos. 7, 8, 11, 15).

However, on September 27, 2016, the *Scoma* Plaintiffs filed a Motion to Intervene and Memorandum in Support (Davis Action Docket, Docs. 18, 19), a Motion to Dismiss or Stay and Memorandum in Support (*id*. at Docs. 20, 21), a motion to appear *pro hac vice* by Daniel Edelman (*id*. at Doc. 17), and, on October 18, 2016, a Notice of Objection to Motion for Preliminary Approval (*id*. at Doc. 30).  First Arkansas filed a Response to the Motion to Intervene on October 11, 2016 (*Id*. at Doc. 24), and the *Davis* Action Plaintiff filed a Combined Response in Opposition to Motion to Intervene and Motion to Dismiss or Stay the Case on October 11, 2016 (*id*. at Doc. 29).

**The *Davis* Action Motion for Preliminary Approval of Class Settlement Agreement**.

On October 11, 2016, the *Davis* Action plaintiff filed a Motion for Preliminary Approval of Settlement Agreement and Memorandum in Support, which are attached to First Arkansas's Motion to Stay. (*See* Doc. 58).   The *Davis* Action Settlement Agreement, mediated on either July 15, 2016, or August 15, 2016 (the papers list both dates as the date of the mediation (*compare* Doc. 58-3, Page ID 693 *with* Doc. 58-12, Page ID 926)), states it "involves a set of approximately 380,000[1] unsolicited faxes successfully sent by or on behalf of Defendants advertising 'Doctors' Club' credit cards." (Doc. 58-3, Page ID 690).   The Settlement Agreement is executed by Davis Neurology and First Arkansas.  (Doc. 58-12, Page ID 925). The Settlement Agreement provides for a settlement fund of $1,525,000 (Doc. 58-12, Page ID 931).   Of that amount, *Davis* Action counsel will ask for a $10,000 incentive fee for Davis Neurology, and attorneys' fees and costs of $457,500 (30% of the settlement fund), to be paid from the settlement fund.  (*Id.*, Page ID 938-39).   In addition, within 15 days of the Court's entry of a Preliminary Approval Order, First Arkansas will transfer $170,000 to the Claims Administrator.   (Doc. 58-12, Page ID 935). Members of the Settlement Class would receive *pro rata* cash payments (net of attorney's fees and expenses, claims administration costs, and the Plaintiff's incentive award) from the settlement fund on a claims-made basis.  (Doc. 58-3, Page ID 695).

The *Davis* Action counsel claim they "could face a number of difficult substantive challenges if the litigation were to continue," and that "continued litigation would involve significant motion practice, including a contested motion for class certification and, perhaps, a motion for summary judgment by First Arkansas," and possibly, the *Davis* Action counsel "would need to conduct additional discovery, including written discovery and party depositions, as well

---

[1] The exact number of successful transmissions per Biggerstaff's Report.

as potential discovery of third parties," and "would likely also need to engage experts to analyze the available transmission data." (Doc. 58-3, Page ID 706).

The Settlement Agreement also provides that "all proceedings" in the *Davis* Action be stayed following entry of an order preliminarily approving the Settlement Agreement (except as may be necessary to implement and comply with the terms of the Agreement), and that pending determination of whether the Settlement Agreement will be given final approval, the parties to the *Davis* Action "agree not to pursue any claims or defenses otherwise available to them, and <u>no person in the Settlement Class</u>, either directly or indirectly, on a representative basis or in any other capacity, will commence or prosecute against any of the Released Parties any action or proceeding asserting any of the Released claims[,]" and, "[t]he proposed order submitted with a motion for preliminary approval will contain an injunction enjoining the commencement or prosecution of Released Claims or persons purporting to act on their behalf pending final approval of the Agreement." (Doc. 58-12, Page ID 947, ¶ P) (emphasis added).

The "Releases" term of the Settlement Agreement is set forth in *haec verba* (First Arkansas is abbreviated as "FABT"):

> Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and any authorized users of their facsimile machines <u>fully release and forever discharge FABT and Dental Equities, and each and all of its present, former and future direct and indirect parent companies, affiliates, subsidiaries, divisions, agents, insurers, independent contractors, successors, predecessors- in-interest, and all of their respective prior, current and future officers, directors, employees, attorneys, shareholders, agents, independent contractors, assigns and anyone working on their behalf (collectively, the "Released Parties")</u>, from any and all rights, duties, obligations, claims, actions, causes of action or liabilities, whether arising under local, state or federal law, whether by Constitution, statute, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, <u>whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or</u>

unliquidated, punitive or compensatory as of the date of the Final Approval Order:  (a) that arise out of or are related in any way to the sending of facsimile transmissions to a facsimile telephone number (to the fullest extent that those terms are used, defined or interpreted by the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., relevant regulatory or administrative promulgations and case law, and expressly including voice and text messages) by or on behalf of any of the Released Parties including, but not limited to, claims under or for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. and any other statutory or common law claim arising from the sending of facsimile transmissions to a facsimile telephone number, including any claim under or for violation of federal or state unfair and deceptive practices statutes, invasion of privacy, conversion, breach of contract, unjust enrichment, specific performance and/or promissory estoppel; or (b) that arise out of or relate in any way to the administration of the settlement (collectively, the "Released Claims.")

Without limiting the foregoing, the Released Claims specifically extend to claims that the Releasing Parties do not know or suspect to exist in their favor at the time that the Settlement Agreement, and the releases contained therein, become effective."

(Doc. 58-12, Page ID 945-46, ¶ O "Releases")

**The Deposition of Dr. Shah in the *Scoma* Action.**   On August 16, 2016, after the mediation in the *Davis* Action, Doctor Kianor Shahmohammadi ("Dr. Shah") was deposed in the *Scoma* Action.  Among the attorneys present was Lewis S. Weiner, representing First Arkansas. (Shah Dep. Tr. at 2).  Dr. Shah is the sole owner of Dental Equities, which was in "the credit card business" -- Dr. Shah wanted to establish a credit card that would cater to doctors.  (*Id*. at 6, 7, 8). The credit card company involved in this business was MasterCard, which provided a budget of $200,000 for marketing towards this effort, of which the "vast majority" was spent.  (*Id*. at 20, 31, 32, 33, 75, 76). Card Assets was a division of First Arkansas.  (*Id*. at 26, 36).  All advertising had to be approved by Card Assets.  (*Id*. at 36).  Card Assets knew of the fax advertising and the quantity of faxes being sent, and approved the fax advertising.  (*Id*. at 49, 80, 81, 97, 98). CarePrecise is a list provider for the healthcare industry.  (*Id*. at 44).  Dental Equities purchased the list of fax numbers used in this case from CarePrecise, using the MasterCard marketing budget.

(*Id.* at 52).  Dental Equities used j2 Global as the fax broadcaster for the faxes in issue.  (*Id.* at 54,

57-59).  Michael Zieg was Dr. Shah's contact at MasterCard.  (*Id.* at 68).  Dr. Shah never called

any entities on the CarePrecise list seeking permission to send a fax advertisement nor did he

instruct anyone at Card Assets to seek permission to send fax advertisements.  (*Id.* at 99).

### Standards for motions to stay

A district court has discretion to issue a stay, but "[t]he proponent of a stay bears the burden

of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). "[T]he burden of making out

the justice and wisdom" of the stay rests "heavily" on the movant. *Landis v. N. Am. Co.*, 299 U.S.

248, 256 (1936). A stay must not be "immoderate," indefinite, or unreasonable.  *CTI-Container*

*Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982).  In determining whether

to grant a stay, courts consider a number of factors, including the pressing need for a stay, the

weight of competing interests, the hardship or inequity of being required to go forward, the

prejudice to either party, and judicial economy.  *See MCC Management of Naples, Inc. v. Arnold*

*& Porter LLP*, 2010 WL 2836627, at *1-*2 (M.D. Fla. July 19, 2010).  Significantly, "if there is

even a fair possibility" that the requested stay "will work damage to someone else," then the

movant faces a heightened burden to "make out a clear case of hardship or inequity in being

required to go forward" with the case. *Id.* at 255. Merely being "required to defend a suit" is not

the type of "hardship or inequity" contemplated by *Landis*. *Lockyer v. Mirant Corp.*, 398 F.3d

1098, 1112 (9th Cir. 2005).

### Argument

I.    **First Arkansas's motion to stay should be denied because the motion for preliminary approval in the *Davis* Action has not been granted, and not all Defendants in the *Scoma* Action have joined the motion to stay.**

First Arkansas argues that courts have found it "appropriate" to stay actions where tentative

settlements have been reached in other judicial districts in related matters.  (First Ark. Br., Doc.

58, at 6). However, the cases cited by First Arkansas, coupled with the facts before this Court, dispose of First Arkansas's argument. In *Valdez v. Saxon Mortg. Servs., Inc.*, 2015 WL 93387, at *1 (N.D. Cal. Jan. 6, 2015), *see* First Ark. Br. at 6, plaintiffs filed a class action against four defendants, two of whom were Ocwen and Deutsche Bank, regarding allegations of force-placed insurance policies in violation of California's Unfair Competition Law (UCL). *Id*. at *1. Ocwen and Deutsche Bank filed a motion to stay, stating they reached a settlement in principle in a case pending in the Southern District of Florida ("*Lee*") regarding the same claims. *Id*. The *Valdez* Court held that a stay would be "inappropriate," stating:

> As defendants must concede, the *Lee* settlement has not received final, let alone preliminary approval. Moreover, only Ocwen and Deutsche Bank—two of the four named defendants in this action—have requested a stay. Plaintiff's claim for violation of the UCL and request for declaratory relief, however, is common to all four defendants. It thus appears that staying the claims against Ocwen and Deutsche Bank, while proceeding with the claims against ASIC and Saxon, could indeed lead to piecemeal adjudication of this action.

*Id*. at *2. In so holding, the *Valdez* Court distinguished the other two cases relied upon by First Arkansas in support of its "stay is appropriate" argument, *JPMorgan Chase LPI Hazard Litig.*, 2013 WL 3829271 (N.D. Cal. July 23, 2013) (staying action for sixty days), and *Ali v. Wells Fargo Bank, N.A.*, 2014 WL 819385 (W.D. Okla. Mar. 3, 2014) (staying litigation pending approval of settlement and closing the case), noting that in contrast to those claims, the *Lee* settlement would not resolve all of plaintiff's claims but only those as to Ocwen and Deutsche Bank. *Id*.

In the instant case, MasterCard, a defendant in the *Scoma* Action, has not joined in the motion to stay but has instead requested additional time to answer, which was granted. (Doc. 60). The proposed *Davis* Action settlement will not resolve all of the *Scoma* Action Plaintiffs' claims, but only those against First Arkansas.[2] Plaintiff has already obtained a default against Dental

---

[2] To the extent First Arkansas argues to the contrary, the argument is made in reliance on a shockingly overbroad release agreed to by the *Davis* Action Plaintiff, which arguably releases MasterCard not only

Associates on May 3, 2016, *see* Doc. 40, 41; it is not clear how the proposed *Davis* Action Settlement Agreement operates to vacate that default.  As in *Valdez*, a stay of the instant case of the claims against First Arkansas and Dental Equities, while proceeding against MasterCard, will lead to piecemeal litigation of this action.  On that basis alone the stay should be denied.

## II.     The *Davis* Action Settlement Agreement is unfairly prejudicial to the *Scoma* Action Plaintiffs and the class they seek to represent, and has the strong indicia of a "reverse auction."

First Arkansas argues the requested stay is appropriate because it "will not be unduly prejudicial, will promote judicial economy, and can prevent inconsistent outcomes in related cases."  (First Ark. Br. at 7).  First Arkansas further argues that "there is a strong possibility that the *Davis* settlement will resolve all claims asserted by Plaintiffs and the putative class members against Defendants in this action," and that "the extension of the stay at that time [preliminary approval] will not prejudice or cause any undue hardship to Plaintiff's because they will be parties to the *Davis* Action, and will be entitled to a pro rata share of the settlement fund established in *Davis*."     (*Id.* at 8).  Contrary to First Arkansas's arguments, a stay of the instant case is unfairly prejudicial to the *Scoma* Action Plaintiffs, is grossly unfair to the proposed classes in both the *Davis* and *Scoma* Actions, and has strong indicia of a "reverse auction."

First, and unlike the Plaintiff in the *Davis* Action, the *Scoma* Action Plaintiffs retained an expert witness, Robert Biggerstaff, who states that based on the records he has examined, 380,665 faxes were successfully transmitted.  (Biggerstaff Report, Ex. 1, at ¶ 1).  The Telephone Consumer Protection Act of 1991 ("TCPA" or "Act"), 47 U.S.C. § 227(b)(3)(A)–(B) provides for statutory damages in the amount of $500 for each violation (as well as injunctive relief against future

---

from the faxing at issue, but from any faxing, text messaging, and recorded call violations committed up to the Effective Date of the Settlement Agreement, whether said claims were known or unknown.  (*See* Doc. 58-12, Page ID 945, ¶ O).

violations). Additionally, the TCPA provides treble damages may be assessed if in the Court's discretion the defendant "willfully or knowingly" violated the act. *Id.* § 227(b)(3). In other words, at the statutory damages rate of $500 a fax, and with 380,665 faxes successfully transmitted, the value of this case is $190,332,500.  The *Davis* Action Settlement Agreement proposes to settle this case at $1,525,000.00, or 0.8% of the value of the case.

Second, the *Davis* Action counsel have taken no depositions, have not hired an expert witness, and have seemingly engaged in no formal discovery except to send Dental Equities written discovery in the State case.  Instead, the *Davis* Action counsel have reviewed documents produced by Dr. Shah (presumably in exchange for dismissing him from the case).  Indeed, *Davis* Action counsel offer their wholesale lack of formal discovery and the apparently daunting task of filing a contested motion for class certification, retaining an expert, and defending against a possible motion for summary judgment, as reasons to settle the case -- "continued litigation would involve significant motion practice, including a contested motion for class certification and, perhaps, a motion for summary judgment by First Arkansas," and they "would need to conduct additional discovery, including written discovery and party depositions, as well as potential discovery of third parties," and "would likely also need to engage experts to analyze the available transmission data." (Doc. 58-3, Page ID 706).

While the *Davis* Action counsel may be put off at the prospect of having to work up the case in which they seek to be appointed class counsel for 380,665 class members, their failure to do so on the one hand and their attempt to preclude the *Scoma* Plaintiffs from doing so on the other (via the instant motion to stay in this case and the request for an injunction in the *Davis* Action) is grossly prejudicial to the *Scoma* Action Plaintiffs. It is inexplicable that the *Davis* Action plaintiff has failed to include MasterCard as a defendant.  As set forth above, MasterCard paid for the fax

advertising, which included purchasing a list of fax numbers from a data provider and retaining the services of a fax broadcaster to transmit the faxes. (Shah Dep. Tr. at 20, 31-33, 75-76). MasterCard's 10-K Report for 2015 lists net revenue at $9.667 billion and Net Income at $3.808 billion.[3]

The *Scoma* Plaintiffs contend that evidence gathered to date, including the testimony of Dr. Shah and other documentary evidence gathered, strongly point to MasterCard being liable for violating the TCPA as to the fax advertisements at issue.  First Arkansas's Motion to Stay seeks to prevent the *Scoma* Plaintiffs from gathering this evidence until the *Davis* Action Settlement Agreement is approved or rejected. The *Scoma* Action Plaintiffs contend that the Settlement Agreement is so transparently flawed it has no chance of being approved.  However, that approval process and the objections that will no doubt be filed as to the Settlement Agreement should it be preliminarily approved, will take months if not years to resolve.  All the while, the evidence to be obtained from MasterCard and party and nonparty witnesses will be growing stale, memories will be fading, and document retention policies may be disposing of relevant evidence.  These factors clearly demonstrate that the *Scoma* Action Plaintiffs will be prejudiced, particularly where MasterCard is not even a defendant in the *Davis* Action.

The *Davis* Action counsel raise the specter of a "contested" motion for class certification and a possible motion for summary judgment, but they unsurprisingly offer no basis for these manufactured concerns.  The faxes at issue are advertisements, they were sent by or on behalf of the First Arkansas, Dental Equities, and MasterCard, *i.e.*, the senders,[4] there is no prior express

---

[3] Available at Mastercard Incorporated Form 10-K (2016, Feb 12), at 46, Retrieved from https://www.sec.gov/Archives/edgar/data/1141391/000114139116000085/ma12312015-10xk.htm.

[4] The regulations implementing the TCPA define "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10).

permission or invitation to send the faxes,[5] there is no compliant opt–out notice on the faxes, and

Plaintiff produced on or about July 20, 2016, Biggerstaff's expert report (Ex. 1) demonstrating the

successful transmission of 380,665 fax advertisements.  In other words, there is simply no basis

for the *Davis* Action counsel's apparent belief that this a weak case.

Third, MasterCard is not only not named as a defendant in the *Davis* Action, it is arguably

released from any liability in the Settlement Agreement, and not only from the faxes at issue in

this case, but also from any other faxes sent prior to the Effective Date of the Settlement

Agreement, and from any voice and text messages sent prior to the effective date of the Settlement

Agreement (which are also not at issue in this case) – "the Released Claims specifically extend to

claims that the Releasing Parties do not know or suspect to exist in their favor at the time that the

Settlement Agreement, and the releases contained therein, become effective."  (Doc. 58-12, Page

ID 945-46, ¶ O "Releases").  In other words, the *Davis* Action plaintiff has failed to conduct the

requisite investigation and discovery necessary in order to determine that MasterCard should have

been named as a defendant regarding the fax advertising at issue, and has arguably provided

MasterCard with a release as to any fax advertising or voice and text messaging done in violation

---

[5] Under the TCPA, prior express permission is a defense, and "the burden of proof rests on the sender to demonstrate that permission was given." *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787, 3812 ¶ 46 (Apr. 6, 2006); *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, No. 12-CV-05105, 2016 WL 5390952, at *3 (N.D. Ill. Sept. 27, 2016) ("Defendants have the burden of proving prior express invitation or permission."); *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 67 F. Supp. 3d 874, 884 (N.D. Ill. 2014) (defendant's "responsibility to demonstrate the existence of established business relationships and consent"); *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, 2014 WL 2946421, at *19, n.22 (W.D. Ky. June 30, 2014) ("the burden is on [defendant] to establish the 'permission' defense"); *Green v. Serv. Master On Location Servs. Corp.*, 2009 WL 1810769, at *2, n.2 (N.D. Ill. June 22, 2009) ("the issue of consent is an affirmative defense"); *Sadowski v. Medi Online, LLC*, 2008 WL 2224892, at * 3–4 (N.D. Ill. May 27, 2008) ("Defendant ultimately has the burden of proof").  Here, Dr Shah has already admitted no prior express permission was sought or obtained.

of the TCPA by MasterCard. The *Scoma* Plaintiffs are clearly unfairly prejudiced by these actions and inactions.[6]

Fourth, as if to insulate itself from the foregoing, the parties to the Settlement Agreement seek entry of an injunction against the *Scoma* Action Plaintiffs, and all other members of the *Davis* Action settlement class, from continuing to gather evidence to identify all proper defendants and in support of their motion for class certification and TCPA claim on the merits. (Doc. 58-12, Page ID 947, ¶ P). Thus, if the *Davis* Action is preliminarily approved, the *Scoma* Plaintiffs will be precluded from taking any further depositions or gathering testimony, documents, and electronically stored information from First Arkansas, MasterCard, and other relevant parties that may become apparent through the discovery process.   MasterCard will not have to answer the Third Amended Complaint and will be (arguably) released from the *Davis* Action, having provided no consideration whatsoever to obtain that release.

Fifth, the *Davis* Action settlement has the earmarks of a reverse auction.  There are several "red flags" in class settlements that can "show their potential unfairness on their face." Federal Judicial Center ("FJC"), *Managing Class Action Litigation: A Pocket Guide for Judges*, IV.C (3d ed. 2010);[7] Newberg on Class Actions § 13:56 (5th ed.). One is a "reverse auction," where the defendant "picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002). There need be

---

[6] First Arkansas's claim that a stay "is appropriate because an answer has not been filed and limited discovery has occurred," *see* First Ark. Br. at 9, ignores the repetitive motion practice engaged in by First Arkansas, including several motions to stay or dismiss and opposition to the filing of the Second Amended Complaint, and an apparent inability to grasp that the purported "limited" discovery is one of the reasons that the *Davis* Action plaintiff was apparently "unarmed" in the settlement discussions with First Arkansas.

[7] Available at http://www.fjc.gov/public/pdf.nsf/lookup/ClassGd3.pdf/$file/ClassGd3.pdf

no "evidence of fraud or collusion." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007). What matters is the "perception" that the plaintiff is so severely disadvantaged that it "necessarily negotiated from a position of weakness," and infected the process with "procedural unfairness." *Id.* The FJC advises federal courts to be alert to several "indicia" of a reverse auction, including the following:

- The defendant chooses to negotiate with "the weakest attorney among a number of plaintiff attorneys who have filed lawsuits dealing with the same subject matter." Pocket Guide § IV.C.5 (citing *Figueroa*, 517 F. Supp. 2d at 1321).

- There is a "difference between the apparent value of the class claims on the merits and the value of the settlement to class members." Pocket Guide § IV.C.5.

- "[T]he settlement will be with an attorney who has not been involved in litigating the class claims that other attorneys have been pursuing, *an especially suspicious circumstance*." Pocket Guide § IV.C.5 (emphasis added).

Each of these indicia are present here. First, First Arkansas has chosen not to negotiate with the highly experienced TCPA junk fax attorneys representing the *Scoma* Action Plaintiffs (Anderson + Wanca and Edelman, Combs, Latturner & Goodwin), who are conducting discovery, have named an expert and produced his report, have conducted a Rule 30(b)(6) deposition of Dental Equities (Dr. Shah), thereby learning further details of MasterCard's involvement in the fax advertising at issue, and then sought and were granted leave to file a Third Amended Complaint wherein MasterCard was added as a defendant, and will continue to conduct the discovery that this case deserves. Instead, First Arkansas has chosen to negotiate with the *Davis* Action plaintiff whom has conducted little if any formal discovery, has taken no depositions (of which the *Scoma* Plaintiffs are aware), has not retained an expert or produced a report, seeks to preclude any further discovery in the case, and agreed to a release that arguably releases MasterCard for no consideration as to this case and for other unknown violations of the faxing, text messaging, and phone recording prohibitions in the TCPA, known or unknown. Indeed, in stark juxtaposition to

the substantial motion practice in the *Scoma* Action, the only motions in the *Davis* Action seem to be agreed motions for extension of time followed by the Motion for Preliminary Approval. (*See Davis* Action Docket, Ex. 6). Under such circumstances, it is not surprising that First Arkansas negotiated with the *Davis* Action Plaintiff. The *Davis* Action counsel's assertion that they are committed to "zealously representing the Plaintiff and the interests of the Settlement Class," *see* Doc. 58-3, Page ID 709, is somewhat ironic when these facts are considered.

Second, the "difference between the apparent value of the class claims on the merits and the value of the settlement to class members" is further indicia of a reverse auction. Pocket Guide § IV.C.5. The minimum classwide damages in this case at $500 per fax is $190,332,500 faxes, based on 380,665 successful fax transmissions reflected in the electronic records reviewed by Biggerstaff. If damages are trebled to $1,500 per fax for "willful or knowing" violations—which is a possibility, since First Arkansas signed off on the fax campaign—the damages could reach $570,997,500.

Under the *Davis* Action settlement, First Arkansas will pay no more than $1.525 million. To obtain approval, First Arkansas and the *Davis* Action plaintiffs will have to show that this amount is within "the range of possible recovery." *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1327 (11th Cir. 2013). There is no indication that First Action cannot satisfy a classwide judgment, and even if such a showing can be made as to First Arkansas, there is certainly no indication MasterCard could not satisfy such a judgment, further underscoring the inexplicable and unjustifiable nature of the *Davis* Action Plaintiff's failure to name MasterCard as a defendant. *Cf. id.* (reversing approval of class settlement where conclusion that it was within the "range of recovery" was based on erroneous finding that defendant was unable to satisfy judgment). And neither First Arkansas nor the *Davis* Action's counsel have made any attempt to justify why this

case should settle for 0.8% of the potential statutory damages at $500 per fax, or 0.26% of the damages at $1,500 per fax. Thus, and notwithstanding that the *Davis* Action plaintiff has not expressly identified any colorable defense in this case (and the *Scoma* Action Plaintiffs contend there is none), the *Davis* Action plaintiff apparently has estimated First Arkansas's chances of prevailing on the merits at between 99.2% and 99.74%.

Third, the proposed settlement is "with an attorney who has not been involved in litigating the class claims that other attorneys have been pursuing, *an especially suspicious circumstance*." Pocket Guide § IV.C.5 (emphasis added). As noted, there has been little to no discovery conducted by the *Davis* Action plaintiff, and there is obviously no intention to conduct any further discovery. Instead, there is an attempt to prevent the *Scoma* Action Plaintiffs from continuing to conduct discovery to build a case to support a motion for class certification, the case on the merits, and thus a settlement position bolstered by testimony, facts, and documents as to all parties that should have been named as defendants in this matter, including MasterCard.

In sum, contrary to First Arkansas's argument, a stay will undoubtedly be prejudicial, as set forth above. The *Davis* Action plaintiff is asking the Eastern District of Arkansas to enjoin the *Scoma* Plaintiffs from pursuing a case that the *Davis* Action plaintiff either will not or cannot pursue (for reasons that are unclear), while at the same time First Arkansas is asking this Court to stay the *Scoma* Action Plaintiffs from gathering the very evidence that the *Davis* Action Plaintiff will not, all to support a transparently weak Settlement Agreement and substantially and unnecessarily overbroad release.

Under the Supreme Court's decision in *Landis*, 299 U.S. at 255, "if there is even a fair possibility that the stay for which he prays will work damage to someone else," then the party seeking a stay must "make out a clear case of hardship or inequity in being required to go forward"

with the case.  On these facts, and with the terms of the *Davis* Action Settlement Agreement, such a showing is not possible.  First Arkansas's claim that "there is a strong possibility that the *Davis* settlement will resolve all claims asserted by Plaintiffs and the putative class members against Defendants in this action" is simply wrong, and the claim that a stay "will not prejudice or cause any undue hardship to Plaintiff's because they will be parties to the *Davis* action, and will be entitled to a pro rata share of the settlement fund established in *Davis*," is unsupportable.

Because there is a "fair possibility" of prejudice to the *Scoma* Plaintiffs from the stay requested, First Arkansas must show "a clear case of hardship or inequity" in going forward with the case. *Landis*, 299 U.S. at 255. The only hint of a claim of hardship or inequity in Defendant's motion is the risk of "unnecessary proceedings and expenses . . . ." (First Ark. Br. at 8). But merely being "required to defend a suit" is not the type of "hardship or inequity" contemplated by *Landis*. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). The burdens First Arkansas complains of are merely the "ordinary hardships attendant upon litigation" and do not "constitute sufficient justification for a stay." *N. Cnty. Commc'ns Corp. v. Verizon Global Networks, Inc.*, 2011 WL 181736, at *3 (S.D. Cal. Jan. 19, 2011); *Valdez*, 2015 WL 93387, at *3 (denying stay based on fact going forward with litigation insufficient hardship to support stay).  First Arkansas has not met its burden to show a true "hardship or inequity," and the motion to stay should be denied.

<u>Conclusion</u>

For the reasons stated herein, First Arkansas's motion to stay this case should be denied. The *Scoma* Plaintiffs have no objection to the extension of time requested by First Arkansas to respond to the Third Amended Complaint.

Respectfully submitted,

SCOMA CHIROPRACTIC, P.A., FLORENCE
MUSSAT, M.D., S.C., and DR. WILLIAM P.
GRESS, individually and as the representatives of a
class of similarly-situated persons,

By:     s/Ryan M. Kelly
        Ryan M. Kelly
        FL Bar No. 90110
        **ANDERSON + WANCA**
        3701 Algonquin Road, Suite 500
        Rolling Meadows, IL 60008
        Telephone: 847-368-1500
        Fax: 847-368-1501
        Email:  rkelly@andersonwanca.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2016, I electronically filed the foregoing with the Clerk
of the Court using the CM/ECF system which will send notification of such filing to all attorneys
of record.

        s/Ryan M. Kelly
         Ryan M. Kelly – FL Bar No. 90110