UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCOMA CHIROPRACTIC, P.A., a
Florida corporation,
individually and as the
representative of a class of
similarly-situated persons,
WILLIAM P. GRESS, an
Illinois resident,
individually and as the
representatives of a class
similarly-situated persons,
and FLORENCE MUSSAT M.D.,
S.C., an Illinois service
corporation,

    Plaintiffs,

v.                                  Case No: 2:16-cv-41-FtM-99MRM

DENTAL EQUITIES, LLC, JOHN
DOES (1-10), FIRST ARKANSAS
BANK & TRUST, and MASTERCARD
INTERNATIONAL INCORPORATED,
a Delaware corporation,

    Defendants/Third
    Party Plaintiff,

PEER EQUITIES, LLC,

    Third Party Defendant.
_____

## **OPINION AND ORDER**

This matter comes before the Court on defendant Mastercard International Inc.'s Motion to Stay Proceedings pending a decision by the Federal Communication Commission (FCC) (Doc. #145) filed on May 11, 2018. Plaintiffs filed a Response in Opposition (Doc. #149) on May 25, 2018. Mastercard also moves to adjourn briefing

on plaintiff's pending Motion for Class Certification (Doc. #146) until the Court determines whether the proceedings will be stayed (Doc. #147). For the reason set forth below, the Motion to Stay is granted.

**I.**

This is a junk fax case. On September 26, 2016, plaintiffs (three medical providers) filed a Third Amended Class Action Complaint (Doc. #55) against Dental Equities, First Arkansas Bank & Trust, MasterCard International Incorporated, and John Does 1-10.[1] The one-count Complaint alleges that defendants violated the Telephone Consumer Protection Act of 1991 (TCPA), as amended by the Junk Fax Protection Act of 2005, 47 U.S.C. § 227, by sending plaintiff (and others) unsolicited commercial advertisements by facsimile machine beginning in December of 2015 (<u>i.e.</u> "junk faxes"). The junk faxes plaintiffs received (Docs. ##55-1 – 55-3) invites recipients who are medical providers to apply for a DoctorsClub MasterCard, and did not include certain opt-out language that plaintiffs argue is required by the TCPA. The junk

---

[1] Defendant First Arkansas Bank & Trust has been dismissed form this action (Doc. #120) and a Clerk's Default has been entered against defendant Dental Equities, LLC and third-party defendant Peer Equities (Doc. #109). Mastercard is the only defendant remaining.

faxes included a picture of the DoctorsClub credit card, which bears the MasterCard logo. (Id.)

Plaintiffs allege on information and belief that MasterCard entered into an agreement with one or more of the other defendants to permit the credit card to carry the MasterCard brand for which MasterCard was to receive part of the revenue from the card's use. (Doc. #55, ¶ 13.) Plaintiffs state that MasterCard provided substantial money to Dental Equities to market the card, and that MasterCard paid for, knew of, and permitted the fax broadcasting at issue in this case. (Id.) Plaintiffs plead that MasterCard is a responsible party under the TCPA because MasterCard benefited from, or would benefit from, the fax marketing of the credit card and provided the funds for the fax advertising to take place. (Id.)

Because plaintiff Florence Mussat, M.D., S.C. (and potentially other class members) used an online fax service to receive the fax at issue, MasterCard moves to stay the proceedings under the primary jurisdiction doctrine pending a decision by the FCC on the Petition for Expedited Declaratory Ruling of AmeriFactors Financial Group, LLC, CG Docket Nos. 02-278, 05-338, filed July 13, 2017 (Doc. #145-5, the AmeriFactors Petition). In the AmeriFactors Petition, AmeriFactors Financial Group LLC has sought an expedited declaratory ruling from the FCC as to whether online fax services fit within the scope of "telephone facsimile

machines" (TFMs) under the TCPA. MasterCard argues that if the AmeriFactors Petition is granted, users of online fax services such as Mussat[2] and others would not be proper class members, either negating plaintiffs' attempt to certify a Rule 23 class or drastically reducing the size of the class. Discovery has closed, and plaintiffs moved for class certification on May 14, 2018, seeking to certify a nationwide class of 381,011 persons.[3] (Doc. #146).

Plaintiffs respond that the FCC has already determined the issues raised by the AmeriFactors Petition and that a wholesale change in the FCC's regulatory framework as to how TFMs are defined would not have retroactive effect on the faxes at issue in this case, citing Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 208-09 (1988). Plaintiffs also argue that a stay would likely last several years.

---

[2] Plaintiff Mussat used an online fax service to receive the fax at issue via a "Vonage fax portal." (Doc. #145-2.) The Vonage fax portal does not automatically print faxes after receipt, but the faxes reside in the Vonage portal. Plaintiff Mussat's staff would print faxes from the portal "pursuant to office policy and practice." (Id.) Plaintiffs Scoma Chiropractic P.A. and Dr. William P. Gress received the fax at issue through a traditional fax machine. (Doc. #145-3, ¶¶ 16-17.)

[3] MasterCard points out that it is potentially on the hook for over $190 million in damages. See 47 U.S.C. § 227(b)(3)(B), $500 for each violation. Treble damages are available if the defendant committed a violation willfully or knowingly. Id. § 227(b)(3)(C).

**II.**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). In determining whether to grant a stay, courts generally examine three factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court. Freedom Scientific, Inc. v. GW Micro, Inc., No. 8:05-cv-1365-T-33TBM, 2009 WL 2423095, *1 (M.D. Fla. July 29, 2009).

**A. Regulatory Framework and the AmeriFactors Petition**

The TCPA makes it "unlawful for any person... *to use any telephone facsimile machine*, computer, or other device to send, to *a telephone facsimile machine*, an unsolicited advertisement" unless there exists an "established business relationship" between the "sender" and the recipient meeting certain criteria. 47 U.S.C. § 227(b)(1)(C) (emphasis added). The statute defines "telephone facsimile machine" as:

> equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from

>an electronic signal received over a regular telephone
>line onto paper.

47 U.S.C. § 227(a)(3). Congress has authorized the FCC to issue regulations to implement the Act. 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection.").

As the TCPA was enacted in 1991, by its terms, the definition of TFM describes a traditional fax machine that utilizes a "regular telephone line" to send or receive text or images. Indeed, the harm identified by Congress in enacting the TCPA was the cost the recipient assumes. See H.R. No. 317 102nd Cong., (1991), at p. 23. Traditional fax machines printed the fax image automatically using the recipient's ink or toner and paper, and tied up the telephone line.

MasterCard's expert, Ken Sponsler, explains that modern online fax providers use cloud-based or "hosted" fax servers to send, receive, and store faxes. These cloud-based servers are hosted in the internet, which means that no on-site physical fax server (for larger businesses) or traditional fax machine (for smaller businesses and individuals) is required. They convert received faxes into digital files (e.g., PDFs), and make those files available to end-users, typically via an online portal or as an email attachment. From the user perspective, the entire process is internet-based. Accordingly, users can send and

receive faxes from a computer, a tablet, or a smartphone using email, a website, software programs, etc. (Doc. #145-3, Sponsler Report, ¶¶ 19-27.) Because online fax portals do not automatically print faxes after receipt, they are attractive to users as they no longer need to pay for fax machines, fax telephone lines, and other supplies; therefore fewer and fewer fax recipients use traditional fax machines. (Doc. #145-5, AmeriFactors Petition, at p. 9.)

The AmeriFactors Petition asks the FCC to examine the state of facsimile technology today and issue a declaratory ruling that the TCPA does not apply to faxes sent or received digitally via an online facsimile service, or on a device other than a telephone facsimile machine. (Doc. #145-5.) The AmeriFactors Petition asserts (and requests a declaratory ruling) that online fax services do not fit within the scope of TFMs as defined by the TCPA and do not fit within the plain meaning of the TCPA. The AmeriFactors Petition notes that online fax services eliminate the harm that the TCPA was designed to address. The Eleventh Circuit has never addressed such an issue.

**B. Primary Jurisdiction Doctrine**

The Eleventh Circuit has explained the doctrine of primary jurisdiction as follows:

> Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of

> the actions by an administrative agency. Even though the court is authorized to adjudicate the claim before it, the primary jurisdiction doctrine comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

Smith v. GTE Corp., 236 F.3d 1292, 1298 n.3 (11th Cir. 2001) (internal citations omitted). There are two main justifications for the rule: (1) the expertise of the agency deferred to; and (2) the need for uniform interpretation of a statute or regulation. Boyes v. Shell Oil Prods. Co., 199 F.3d 1260, 1265 (11th Cir. 2000). The United States Supreme Court has made clear that there is no "fixed formula ... for applying the doctrine of primary jurisdiction." United States v. Western P.R. Co., 352 U.S. 59, 64 (1956).

The Court finds that MasterCard has demonstrated the applicability of the primary jurisdiction doctrine to this case. Deferring to the FCC would advance the basic purpose of the doctrine because the specialized knowledge of the FCC is needed to answer the questions before the Court and deferral is necessary for a uniform interpretation of the statutory questions at issue. Whether TFMs encompass online fax services is a matter of defining a technical term and Congress has explicitly tasked the FCC with prescribing regulations to implement the requirements of the TCPA, including the subsection prohibiting unsolicited facsimile

advertisements. See 47 U.S.C. § 227(b)(2); Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1305 (11th Cir. 2015). Although there have been prior occasions when the FCC has addressed whether certain computerized faxing technology falls within the TCPA's prohibitions, the last occasion was in 2015, and none appear to be directly applicable to the issues raised here with regard to sending and receiving faxes using cloud-based servers, raising a potential first-impression interpretation for the FCC. See Doc. #145, pp. 10-11.

As to uniformity of administration, if this case proceeds, there is a risk that the Court could reach a determination that is inconsistent with the FCC's ultimate decision on the AmeriFactors Petition, and this Court is ultimately bound to adhere to the FCC's interpretations of the TCPA. Sliwa v. Bright House Networks, LLC, No. 2:16-CV-235-FTM-29MRM, 2016 WL 3901378, at *4 (M.D. Fla. July 19, 2016) ("[T]his court, like all district courts, 'lacks jurisdiction under the Hobbs Act to consider the argument that the FCC incorrectly interpreted [the TCPA]." (internal alterations omitted) (quoting Murphy, 797 F.3d at 1305)); see also Imhoff Inv., L.L.C. v. Alfoccino, Inc., 792 F.3d 627, 637 (6th Cir. 2015) (observing that a direct challenge at the district court level to "the legitimacy of the FCC's definition of sender in [Section] 64.1200(f)(10) [is un]likely to be viable because the Hobbs Act confers jurisdiction on Courts of Appeal to review FCC regulations

only by direct appeal from the FCC"); Chhetri v. United States, 823 F.3d 577, 586-87 (11th Cir. 2016) (affirming the district court's conclusion that it lacked jurisdiction under the Hobbs Act to review the validity of a regulation promulgated by a federal agency); CE Design, Ltd. v. Prism Bus. Media, Inc., 606 F.3d 443, 449 (7th Cir. 2010) ("[T]he Hobbs Act prevents the district court from reviewing the validity of FCC regulations."). Furthermore, the AmeriFactors Petition seeks a ruling on an issue that would directly implicate whether plaintiffs may satisfy commonality or predominance,[4] and whether Mussat may serve as a class representative. If the FCC statutorily exonerates online fax services from the TCPA, this could be a different case and at a minimum would affect the issues raised in the class certification briefing.

Plaintiffs' argument that a stay would be futile because the FCC's decision would not have retroactive effect on the faxes at issue is premature and does not affect this Court's analysis as to whether a stay is appropriate now. Whether the FCC's decision has retroactive or prospective effect depends on whether the FCC's decision is rulemaking or a clarification (or both), with a lens

---

[4] MasterCard states that the faxing records in this case do not reveal what type of equipment or service was used to receive the faxes; therefore, the Court would have to engage in individual inquiries to determine whether a class member used an online fax service, defeating commonality.

towards manifest injustice. See Qwest Services Corp. v. FCC, 509 F.3d 531, 535-39 (D.C. Cir. 2007). The parties can address the application to this case once the FCC issues its decision.

The Court is also not persuaded by plaintiffs' argument that a stay of this matter would likely last several years due to the judicial appeals from any final ruling. The D.C. Circuit applies an exacting standard and will not invalidate the final order "unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Vernal Enters., Inc. v. Fed. Commc'ns Comm'n, 355 F.3d 650, 658 (D.C. Cir. 2004) (quoting 5 U.S.C. § 706(2)(A)). Furthermore, the extent to which this Court would be bound by the D.C. Circuit's decision is not entirely clear. Generally speaking, "[b]inding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that district." Murphy v. F.D.I.C., 208 F.3d 959, 965 (11th Cir. 2000) (quoting In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987), aff'd sub nom., Chan v. Korean Air Lines, Ltd., 490 U.S. 122 (1989)). Even assuming this Court is bound to follow the result reached by the D.C. Circuit, until that court issues its opinion, the FCC's Final Order "has the force of law" in this Court and this case could proceed. Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1121 (11th Cir. 2014) (citation omitted).

In sum, the Court finds that a stay will simplify and streamline the issues raised in this case and reduce the burden of litigation on the parties and on the Court. Any delay plaintiffs will experience in this case is outweighed by the potential prejudice that could inure to MasterCard and its liability to class members that might very well not fit within the proposed class following the FCC's decision.

This case is stayed pending resolution of AmeriFactors Petition by the FCC and because the FCC's decision could substantially affect the substance of plaintiff's Motion for Class Certification, the Court will deny the Motion for Class Certification without prejudice to be re-filed once the stay is lifted. Moreover, the parties' experts have dueling opinions regarding the technology used by online fax services; therefore, the Court will deny Mastercard's request to file a sur-rebuttal report (Doc. #146) without prejudice to re-filing as the FCC's conclusions may affect the experts' opinions.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant Mastercard International Inc.'s Motion to Stay Proceedings (Doc. #145) is **GRANTED**. This case is **STAYED** and the Clerk is directed to add a stay flag.

2. The stay shall remain in effect until such time as the FCC issues a decision on the Petition for Expedited Declaratory

Ruling of AmeriFactors Financial Group, LLC. Mastercard is directed to file a notice with the Court when the FCC reaches a decision. Once the stay is lifted, the parties should also propose a briefing schedule for class certification and inform the Court whether the remaining case deadlines remain feasible.

3. Plaintiff's Motion to Certify Class (Doc. #146) and Defendant's Motion for Leave to File Sur-Rebuttal Report (Doc. #143) are **DENIED without prejudice.**

4. Defendant's Motion to Stay Briefing (Doc. #147) and Motions for Leave to File Replies (Doc. ##148, 151) are **DENIED as moot.**

**DONE and ORDERED** at Fort Myers, Florida, this ___1st___ day of June, 2018.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record