# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

SCOMA CHIROPRACTIC, P.A., a
Florida corporation; FLORENCE
MUSSAT M.D., S.C., an Illinois
service corporation; and WILLIAM P.
GRESS, an Illinois resident,
individually and as the
representatives of a class of similarly-
situated persons,

      Plaintiffs,

v.    Case No:   2:16-cv-41-JLB-MRM

DENTAL EQUITIES, LLC, a
Nevada limited liability company,
FIRST ARKANSAS BANK &
TRUST, MASTERCARD
INTERNATIONAL
INCORPORATED, a Delaware
corporation, and JOHN DOES 1-10,

      Defendants.
_____/

## ORDER

This matter is before the Court on (1) "Plaintiffs' Amended Motion to Certify Class" (Doc. 159); (2) the Magistrate Judge's Report and Recommendation ("Report"), entered January 29, 2021, recommending that Plaintiffs' Amended Motion to Certify Class be denied (Doc. 172); (3) "Plaintiffs' Objections to Magistrate Judge's Report and Recommendation Regarding Class Certification" (Doc. 173); and (4) "Plaintiffs' Motion to Stay Pending Final FCC Decision on AmeriFactors Petition" (Doc. 174).

In addition, Defendant[1] has filed an "Unopposed Motion for Extension of Time to Respond to (1) Plaintiffs' Objections to the Magistrate Judge's Report & Recommendation, and (2) Plaintiffs' Motion to Stay." (Doc. 175.)

## BACKGROUND

### A. Procedural History

A brief recitation of the relevant procedural history is instructive. This is a junk fax case brought pursuant to the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("the TCPA"). Plaintiffs filed the operative Third Amended Complaint on September 26, 2016 (Doc. 55), and the case proceeded with class and expert discovery through May 2018. On May 14, 2018, Plaintiffs filed their First Motion to Certify Class (Doc. 146), while Defendant filed a "Motion to Stay Proceedings" three days earlier on May 11, 2018 (Doc. 145). Defendant's Motion to Stay sought to defer a ruling on class certification until after an order was issued on a Petition pending before the Federal Communications Commission ("FCC" or "Commission") that had been filed by an unrelated third party, AmeriFactors Financial Group, LLC ("AmeriFactors"). The issue raised by the AmeriFactors Petition was whether internet-based fax equipment—as opposed to a standalone fax machine—qualifies as a "telephone facsimile machine" within the meaning of the TCPA. According to Defendant, a ruling by the FCC in favor of AmeriFactors would mean that one of the three named

---

[1] Mastercard International Incorporated is the sole remaining Defendant in this action, and therefore will be referred to as "Defendant."

plaintiffs in this matter, Plaintiff Florence Mussat, and the sub-class of plaintiffs she sought to represent, would not be able to state a claim under the TCPA because the faxes sent to them were forwarded from an online fax service, not a traditional fax machine.

While the issue raised by Defendant clearly goes to the merits of Plaintiff Mussat's claim and that of the sub-class she seeks to represent, Defendant argued that a ruling by the court on class certification should await a declaratory ruling by the FCC on the online fax issue because, "at a minimum," that ruling might "drastically reduce the size of [any] class" that could be certified. (Doc. 145 at 2-3.) Defendant argued that an FCC ruling against a statutory interpretation encompassing online fax services would have even further implications for class certification—it would entirely "negate" Plaintiffs' attempt to certify any class at all. The reason, according to Defendant, was that faxing records do not distinguish between fax recipients who used a traditional fax machine and those, like Plaintiff Mussat, who used an online fax service to collect and forward faxes to them. As a result, Defendant asserted that even though fax recipients like named Plaintiffs Scoma and Gress, who received faxes by stand-alone fax machines, could state a valid claim against Defendant under the TCPA regardless of any potential future FCC ruling on the AmeriFactors Petition, it would be impossible for Plaintiffs to demonstrate that a sub-class of stand-alone fax machine fax recipients was certifiable. Defendant contended that this is because the members of that putative sub-class could not be <u>ascertained</u> from the fax records or, at the very least, because

the only available modes for ascertainment would defeat the Rule 23(b)(3) requirements of commonality, typicality, predominance, and superiority.  (Id.)

Plaintiffs, of course, opposed Defendant's Motion to Stay, arguing, among other things, that it was unlikely the FCC would interpret the statutory term "telephone facsimile machine" to exclude computers, and also that it would unfairly prejudice Plaintiffs to stay the case when a class certification motion was pending and Defendant could have, but did not, raise its legal challenge to Plaintiff Mussat's claim earlier in the proceedings.  (Doc. 149.)  Notwithstanding Plaintiffs' opposition, however, the previously assigned district judge entered an order on July 1, 2018 granting Defendant's motion and stayed the case pending the FCC's decision.  (Doc. 152.)

The stay remained in effect for approximately eighteen months.  On December 9, 2019, the Consumer and Governmental Affairs Bureau ("Bureau"), acting pursuant to authority delegated to it by the FCC, ruled in favor of AmeriFactors, holding that the TCPA does not apply to online fax services.  Notice of the ruling was given to the newly assigned district judge in this matter (Doc. 154), who then lifted the stay as of January 2, 2020 (Doc. 156).

On March 13, 2020, Plaintiffs re-filed their class certification motion.  (Doc. 159.)  Their amended motion seeks certification of a class of all persons or entities who were successfully sent a junk fax on Defendant's behalf between December 18 and 23, 2015.  But if the Court finds it necessary to distinguish between faxes received on a "stand-alone" fax machine and faxes received via an "online fax

service," then Plaintiffs seek to certify alternative classes, with Plaintiffs Scoma and Gress representing the Stand-Alone Fax Machine Class and Plaintiff Mussat representing the Online Fax Service Class. (Doc. 159 at 4.) Defendant filed its response to Plaintiffs' amended class certification motion on May 27, 2020. (Doc. 162.)

Approximately four years after this case commenced, on June 16, 2020, the case was reassigned to the undersigned judge, following which reply and surreply briefs on the class certification motion were filed on June 17, 2020 (Doc. 165) and July 8, 2020 (Doc. 168), respectively. The Report addressing class certification was entered on January 29, 2021. (Doc. 172.)

B.    **Report and Recommendation**

The Report concludes that class certification is inappropriate for several reasons.

First, the Magistrate Judge found that the FCC's AmeriFactors Order is entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Further, the Magistrate Judge reasoned, even if the undersigned judge found Chevron inapplicable, deferral to the AmeriFactors Order was still recommended because of the Bureau's specialized expertise in area. (Doc. 172 at 21-22.) In light of the Bureau's decision in the AmeriFactors Order, the Magistrate Judge concluded that online fax services are outside the scope of the TCPA. (Id. at 27.)

Describing the question of whether online fax services are outside the scope of the TCPA as a "threshold" issue to Plaintiffs' class certification motion (id. at 28), the Magistrate Judge then concluded that Plaintiff Mussat did not have either constitutional or statutory standing to bring a claim under the TCPA. (Id. at 31-35.) She did not have statutory standing because of the AmeriFactors Order, and she did not have constitutional standing because her only harm was the brief minute or two of time she wasted reviewing the junk fax received through e-mail, which, according to the Magistrate Judge, was not a sufficiently concrete injury for constitutional standing purposes. (Id. at 32 (citing Daisy, Inc. v. Mobile Mini, Inc., No. 2:20-cv-17-FtM-38-MRM, 2020 WL 5701756, at *7 (M.D. Fla. Sept. 24, 2020) (Chappell, J.).) The issue of constitutional standing had not been raised by Defendant and thus was outside the parties' briefing on the class certification motion. (Doc. 173 at 4.)

After holding that Plaintiff Mussat did not have a claim under the TCPA, and that, even if she did, she was prevented from suing on that claim by the constitutional doctrine of standing, the Magistrate Judge went on to address whether class certification was appropriate as to only the stand-alone fax machine users. The Magistrate Judge recommended that this Court find class certification inappropriate even as to the sub-class of plaintiffs who received faxes on a stand-alone fax machine and thus indisputably have valid claims under the TCPA. The Magistrate Judge reasoned that the class certification motion as to this sub-group failed because Plaintiffs could not show it was administratively feasible to identify

the members of the more limited class of fax recipients who used a stand-alone fax machine. (Id. at 35-36 (noting that the Eleventh Circuit has consistently applied the administrative feasibility test, albeit in non-binding orders).) The Magistrate Judge also rejected Plaintiffs' proposal for ascertaining those class members who received faxes via stand-alone fax machines. Specifically, the Magistrate Judge reasoned that Plaintiffs' proposed method of identification would lead to individual inquiries that would defeat not only the administrative feasibility component of the ascertainability requirement for class certification, but also the predominance and superiority requirements of Rule 23(b)(3). (Id. at 42, 50-54.) As a result, the Magistrate Judge found that "the Stand-Alone Fax Machine Class is not ascertainable because it is unmanageable, is administratively infeasible, and necessitates considerable individual inquiry." (Id. at 43.)

**C.     The Eleventh Circuit's February 2, 2021 Decision in Cherry**

Four days after the Magistrate Judge entered his Report as to class certification, on February 2, 2021, the Eleventh Circuit issued an opinion that upended certifying courts' utilization of the administrative feasibility test. Specifically, in Cherry v. Dometic Corp., 986 F.3d 1296, 2021 WL 346121, at *5 (11th Cir. Feb. 2, 2021), the Eleventh Circuit held that "administrative feasibility is not a requirement for certification under Rule 23." The requirement for class certification of ascertainability, the court explained, is limited "to its traditional scope: a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." Id. There is no dispute here that Plaintiffs' proposed class definitions meet the traditional ascertainability rule in

that they sufficiently describe a class membership that is "capable of determination." That is, a putative class of all fax recipients can be ascertained or, alternatively, two sub-classes can be readily ascertained: (1) class members who allegedly received unsolicited faxes via standalone fax machines; and (2) class members who allegedly received unsolicited faxes via internet-based fax service companies that forward the faxes by email.

**D.**     **Plaintiffs' Filings in Response to the Report and Recommendation**

On February 12, 2021, Plaintiffs filed their Objections to the Report and Recommendation, in which they argue that the Report should not be adopted. (Doc. 173.) They argue that because the Report turns on a finding of administrative infeasibility, which is not a requirement under the Eleventh Circuit's articulation of the law in Cherry, the undersigned should not adopt the Report. (Id.) Thus, Plaintiffs ask this Court to reject the Report and certify Plaintiffs' proposed "All Fax Recipients Class," or, alternatively, Plaintiffs' proposed separate "Online Fax Services Class, and "Stand-Alone Fax Machine Class." (Id. at 2.) At the same time, however, Plaintiffs also have filed a motion requesting a stay, in which they inform the Court that an Application for Review of the Bureau's declaratory ruling on the AmeriFactors Petition has been filed with the FCC. (Doc. 174 at 1-3.) Plaintiffs thus seek an order staying this case pending the issuance of a "final order" of the FCC on the Application for Review. (Id. at 4.)

## DISCUSSION

As an initial matter, the Magistrate Judge issued an outstanding, well-reasoned, and exhaustive Report and Recommendation, analyzing the issues posed by the amended class certification motion. Nevertheless, it is impossible to avoid the fact that only four days after the Report was issued, there was a dramatic shift in the law as a result of the Eleventh Circuit's decision in Cherry, impacting the class certification issues that are the subject of the Report.

The Eleventh Circuit's decision in Cherry is directly applicable to the Magistrate Judge's primary conclusion in the Report—namely, that it is not administratively feasible to ascertain a class consisting only of standalone fax machine users. As of the date of this Order, the Eleventh Circuit's mandate in Cherry has not yet issued. Once that mandate issues and Cherry becomes binding law in this Circuit, however, that portion of the Report based on administrative feasibility will have been overruled by Cherry.

The Eleventh Circuit's Cherry decision also impacts other portions of the Report. The Eleventh Circuit held that administrative feasibility "remains relevant to whether a proposed class may proceed under Rule 23(b)(3)." Cherry, 2021 WL 346121, at *3. And other portions of the Report discuss the administrative feasibility issue of separating out stand-alone fax machine users from online fax service users in the context of Rule 23(b)(3)'s requirements of predominance and superiority. The Cherry court specified that administrative feasibility was primarily relevant to the superiority requirement of Rule 23(b)(3), and that lack of

administrative feasibility was not an absolute prohibition on a finding of superiority but merely one factor the court should balance in deciding whether a class action creates more or less management problems than any other alternative. Id. at *5. The Report does not address administrative feasibility in the context of the superiority requirement in the manner specified in Cherry because Cherry had not yet been decided when the Magistrate Judge issued the Report analyzing the superiority requirement. Further, it is impossible to say whether and to what extent the Report's discussion of administrative feasibility in the context of the superiority requirement of Rule 23(b)(3) draws upon or is influenced by the Report's discussion of the administrative feasibility as a function of ascertainability, a discussion that is based on case law and principles that have now been repudiated by the Eleventh Circuit.

Moreover, when the parties briefed the class certification motion for purposes of the Magistrate Judge's Report, they did so without the benefit of the Eleventh Circuit's views in Cherry. Therefore, it cannot be known what different arguments the parties would have made had the Cherry decision already been issued, or whether those different arguments would have persuaded the Magistrate Judge to reach a different recommendation.

For all of these reasons, and with due regard for the extensive time and effort invested by the Magistrate Judge in the detailed and well reasoned Report entered on January 29, 2021, the Court must reluctantly conclude that the best and fairest approach to the situation this case now finds itself in is to start fresh with new

briefing on class certification that addresses certification in the post-Cherry world in which we now live.

At the same time, the Court does not believe it makes sense to issue another stay in this case to wait for yet another FCC ruling on the question of whether an online fax service falls within the purview of the TCPA. That question, after all, goes to the merits of whether Plaintiff Mussat can state a valid claim for relief. See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 470 (2013) (a merits contention that is common to the class, the resolution of which might result in a lack of predominance for purposes of Rule 23(b)(3), "is properly addressed at trial or in a ruling on a summary-judgment motion"; it "should not be resolved in deciding whether to certify a proposed class"). It therefore factors into the Rule 23 class certification question only insofar as a ruling against Plaintiff Mussat might raise issues "as part of the manageability criterion of Rule 23(b)(3)(D)." Cherry, 2021 WL 346121, at *5. Plaintiffs have moved for a stay apparently on the theory that what is good for the goose is also good for the gander—Defendant argued successfully for a stay when FCC law was unsettled in Plaintiffs' favor, and now Plaintiffs seek a stay when FCC law is unsettled in Defendant's favor.

The FCC's ultimate resolution of the AmeriFactors Petition, however, is relevant to this case because it may affect a merits issue that presents a question of law common to the proposed class. While the ultimate resolution of that common legal issue might have an effect on class manageability, that issue can be addressed when and if it arises at some point in future proceedings; it need not be addressed

in the context of class certification. That is, if a later substantive ruling on the merits of the online fax issue renders a certified class unmanageable, then, as the Eleventh Circuit observed in Cherry, the district court always has the discretion to decertify the class. See id. (citing Mullins v. Direct Digit, LLC, 795 F.3d 654, 664 (7th Cir. 2015)). What does not make sense is for this Court to issue another stay to wait for the FCC to issue still another ruling on that merits issue, particularly given that the FCC's final ruling may or may not be binding on this Court depending on what the controlling law is on that question at the time of that FCC ruling. See Gorss Motels, Inc. v. Safemark Sys., LP, 931 F.3d 1094, 1105-12 (11th Cir. 2019) (Pryor, J., concurring) (urging the Eleventh Circuit to overrule previous circuit authority holding that district courts are bound by the FCC's interpretations of the TCPA and instead follow the concurring opinion in PDR Network, LLC v. Carlton & Harris Chiropractic, Inc., 139 S. Ct. 2051, 2057 (2019) (Kavanaugh, J., concurring)).

In sum, given the intervening change in controlling law that has occurred here, the Court no longer has the full benefit of the parties' arguments or the Magistrate Judge's recommendations. Accordingly, the Court finds good cause to deny without prejudice Plaintiffs' amended motion for class certification and require new briefing on a re-filed motion that addresses class certification with the benefit of the Eleventh Circuit's guidance in Cherry on the issues raised by Plaintiffs' class certification motion.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that:

1. Plaintiffs' Amended Motion for Class Certification (**Doc. 159**) is **DENIED WITHOUT PREJUDICE**.

2. The Report and Recommendation (**Doc. 172**) is vacated as **MOOT** in light of the Eleventh Circuit's recent decision in Cherry v. Dometic Corp., 986 F.3d 1296, 2021 WL 346121 (11th Cir. Feb. 2, 2021), which was issued after the Report and Recommendation.

3. Plaintiffs' objections to the Report and Recommendation (**Doc. 173**) are **OVERRULED WITHOUT PREJUDICE as MOOT** in light of this Order.

4. Plaintiffs' Motion to Stay (**Doc. 174**) is **DENIED**.

5. Defendant's unopposed motion for extension of time (**Doc. 175**) is **DENIED WITHOUT PREJUDICE as MOOT**.

6. The parties are ordered to file a Joint Notice of Issuance of Mandate in this case upon the Eleventh Circuit's issuance of the mandate in Cherry.

7. Plaintiffs must file a second amended motion for class certification no later than **thirty (30)** days after the mandate in Cherry is issued by the Eleventh Circuit. Defendants must file their response in opposition to Plaintiffs' second amended class certification motion within **twenty-one (21)** days thereafter. Plaintiffs are granted leave to file any reply brief in support of their second amended class certification motion within **fourteen (14)** days thereafter.

8. Given the impact of Eleventh Circuit's February 2, 2021 intervening decision in Cherry and the Court's order to re-brief the class certification issue in light of that decision, the Clerk of Court is **DIRECTED** to administratively close the file. The Clerk of Court is **DIRECTED** to re-open the case **fourteen (14)** days after Defendant files its Response to Plaintiffs' second amended motion for class certification.

9. The Court notes that this case is more than five years old. In an effort to move this case along, this Court will not grant extensions of time to file the second amended motion for class certification, the response, or reply absent a showing of extraordinary circumstances. Lastly, after carefully reviewing the entire file and the applicable law, the Court urges, but does not order (at least for now), the parties to consider settlement discussions.

**ORDERED** in Fort Myers, Florida, on February 24, 2021.

*/s/ John L. Badalamenti*
_____
**JOHN L. BADALAMENTI**
**UNITED STATES DISTRICT JUDGE**