UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCOMA CHIROPRACTIC, P.A., a
Florida corporation, FLORENCE
MUSSAT M.D., S.C., an Illinois
service corporation, and WILLIAM P.
GRESS, an Illinois resident,
individually and as the
representatives of a class of similarly-
situated persons,

        Plaintiffs,

v.                                                          Case No:  2:16-cv-41-JLB-MRM

DENTAL EQUITIES, LLC, FIRST
ARKANSAS BANK & TRUST,
MASTERCARD INTERNATIONAL
INCORPORATED, a Delaware
corporation, and JOHN DOES 1-10,

        Defendants.

_____/

## **ORDER**

    This is a junk fax case brought pursuant to the Telephone Consumer

Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47

U.S.C. § 227 ("the TCPA").  (Doc. 55.)  Plaintiffs have moved for class certification,

and Defendant Mastercard International Incorporated ("Mastercard") has

responded in opposition.  (Docs. 178, 182, 184, 186.)  After careful consideration,

and with guidance from the Eleventh Circuit's recent decision in Cherry v. Dometic

Corp., 986 F.3d 1296 (11th Cir. 2021), Plaintiffs' motion for class certification (Doc.

1

178) is **GRANTED in part** and **DENIED in part**.  The Court certifies one class: those who received unsolicited faxes from their standalone fax machines from Defendant advertising its "DoctorsClub" Mastercard credit card.  The Court denies Plaintiffs' request to certify a class containing those who received those unsolicited faxes from Defendant through a third-party online fax service.

## BACKGROUND

The relevant background has been outlined by the Court more than once in this case.  In short, Plaintiffs allege that faxes advertising the "DoctorsClub" Mastercard credit card were sent to fax numbers without prior permission from the recipients.  (Doc. 55 at 2, ¶ 2, at 5, ¶¶ 15–21.)  Plaintiffs Scoma Chiropractic, P.A. ("Scoma") and Dr. William Gress received the faxes on traditional stand-alone fax machines, and Plaintiff Florence Mussat, M.D., S.C. ("Mussat"), received the fax via an online fax service.  (Doc. 178 at 2, ¶¶ 4–5.)  In 2016, Plaintiffs filed a class action complaint under the TCPA.  (Doc. 1.)[1]

---

[1] To prevail on their TCPA claim, Plaintiffs must show that Mastercard "use[d] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."  47 U.S.C. § 227(b)(1)(C).  Mastercard asserts that the cards were offered through a business relationship among Mastercard, First Arkansas Bank & Trust ("FAB"), which issued the card, and Dr. Kianor Shahmohammadi, who bought the list of fax numbers, drafted the fax, and used a third-party to send the faxes.  (Doc. 182 at 7 (citations omitted).)

In Davis Neurology PA v. Dental Equities, LLC, No. 16-cv-371 (E.D. Ark. Oct. 11, 2016), ECF No. 25, a class of recipients settled a TCPA class action against FAB and Dental Equities, LLC.  Mastercard was not included in the settlement agreement's liability release.  Id. ECF No. 40 ¶ 2.  Plaintiffs dismissed their claims against FAB in this action.  (Doc. 119.)  They further "anticipate dismissing their

2

Following Plaintiffs' Third Amended Complaint but prior to Plaintiff's first motion for class certification, Mastercard moved to stay proceedings pending a decision by the Federal Communications Commission ("FCC") on a petition filed by AmeriFactors Financial Group, LLC.  (Docs. 55, 145, 146.)  The issue raised by that petition was whether internet-based fax equipment constitutes a "telephone facsimile machine" under the TCPA.  Finding that the issue could substantially affect the claims of Mussat and the class it sought to represent, the Court stayed proceedings pending the decision.  (Doc. 152.)  In a 2019 Declaratory Ruling, the Consumer and Governmental Affairs Bureau (the "Bureau"), acting on delegated authority from the FCC, determined that the TCPA does not apply to online fax services.  (Doc. 154-1.)[2]  The stay was then lifted, Plaintiffs refiled their motion for class certification, and—more than four years after the initial complaint was filed— the case was reassigned to the current judge.  (Docs. 156, 159, 164.)

In recommending that the renewed motion for class certification be denied, the Magistrate Judge determined that: (1) online fax services fall outside the scope of the TCPA; (2) absent Article III or "statutory standing," individuals who received the fax via an online service could not raise a TCPA claim; and (3) Plaintiffs'

_____

claims" against Dental Equities, LLC, and "do not seek to certify a class against Dental Equities."  (Doc. 178 at 1 n.1.)  Clerk's default has been entered against Dental Equities, LLC and third-party Peer Equities, LLC.  (Docs. 41, 109.)

[2] See In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling, No. 05-338, 2019 WL 6712128 (OHMSV Dec. 9, 2019) ("AmeriFactors").

proposed method to identify class members who used a stand-alone fax machine was not administratively feasible and did not satisfy predominance and superiority under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  (Doc. 172 at 27, 31–35, 42–43, 50–54.)  Four days later, the Eleventh Circuit held that "administrative feasibility is not a requirement for certification under Rule 23." <u>Cherry</u>, 986 F.3d at 1304.  In light of <u>Cherry</u>, the report and recommendation was vacated, and Plaintiffs were permitted to refile their motion for class certification.  (Doc. 176.)

## RELIEF REQUESTED

Plaintiffs move under Rule 23(b)(3) of the Federal Rules of Civil Procedure to certify and be appointed class representatives of the following class:

> All persons or entities who were successfully sent a facsimile on or about December 18–23, 2015, stating "Happy Holiday" and inviting recipients to apply for an "Exclusive Doctors Club World Elite MasterCard" credit card, where the fax either (a) contains no "opt-out notice" explaining how to stop future faxes; or (b) contains an opt-out notice stating: "Recipient may Opt Out of any future faxes by emailing a request to OptOut@TheDrClub.com or by calling 949.202.1777.  ("All Fax Recipients Class")

(Doc. 178 at 4–5, ¶ 1.)  Alternatively, "if the Court finds it necessary to distinguish between faxes received on a 'stand-alone' fax machine and faxes received via 'online fax service,'" Plaintiffs seek to certify the following two classes:

> All persons or entities who were successfully sent a facsimile on a stand-alone telephone facsimile machine on or about December 18–23, 2015, stating "Happy Holiday" and inviting recipients to apply for an "Exclusive Doctors Club World Elite MasterCard" credit card, where the fax either (a) contains no "opt-out notice" explaining how to

4

stop future faxes; or (b) contains an opt-out notice stating: "Recipient may Opt Out of any future faxes by emailing a request to OptOut@TheDrClub.com or by calling 949.202.1777." ("Stand-Alone Fax Machine Class")

All persons or entities who were successfully sent a facsimile via an "online fax service" on or about December 18–23, 2015, stating "Happy Holiday" and inviting recipients to apply for an "Exclusive Doctors Club World Elite MasterCard" credit card, where the fax either (a) contains no "opt-out notice" explaining how to stop future faxes; or (b) contains an opt-out notice stating: "Recipient may Opt Out of any future faxes by emailing a request to OptOut@TheDrClub.com or by calling 949.202.1777." ("Online Fax Service Class")

(Doc. 178 at 5, ¶ 3.)  Plaintiffs request that Scoma and Dr. Gress be appointed to represent the Stand-Alone Fax Machine Class and Mussat represent the Online Fax Service Class.  (Id. at 6, ¶ 4.)  They also request that "the Court appoint the law firms of Anderson + Wanca ('A+W'), and Edelman, Combs, Latturner & Goodwin ('ECLG'), and Curtis C. Warner ('Warner') as class counsel."  (Id. at ¶ 5.)

Mastercard opposes the motion on several grounds.  (Doc. 182.)  First, Mastercard contends that the Court should determine at this stage that the TCPA does not apply to faxes received via online fax services.  (Id. at 12–17, 38–41.)  As a result, Mastercard reasons, the All Fax Recipients and Online Fax Service Classes include members who lack both constitutional and "statutory" standing and the classes cannot be certified.  (Id. at 17–21.)  As to the Stand-Alone Fax Machine Class, Mastercard contends that, even if administrative feasibility is not required, Plaintiffs have not established predominance or superiority under Rule 23(b)(3).  (Id. at 21–38.)

## LEGAL STANDARD

The party seeking class certification must show that the proposed class meets Rule 23's requirements.  Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1233–34 (11th Cir. 2016).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a).

The party seeking certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013).  Plaintiffs seek certification under Rule 23(b)(3), which requires that the Court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); (Doc. 178 at 15).  Relevant considerations include: the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).

6

## DISCUSSION

Certification of the All Fax Recipients and Online Fax Service Classes is inappropriate.  First, it is likely that many of the putative members who received the fax via an online fax service lack Article III standing.  Second, the question of whether the TCPA covers receipt of a fax via an online fax service bears on the predominance inquiry under Rule 23(b)(3) and must be answered.  The Court finds that receipt of such faxes through online fax services is not covered by the TCPA.  Accordingly, individual issues of whether a member received a fax via an online fax service will predominate over any common issues as to the All Fax Recipients Class, and individual issues of Article III standing will predominate as to both classes.

As to the Stand-Alone Fax Machine Class, Plaintiffs have met Rule 23's requirements, and certification of that subclass is appropriate.  Scoma and Dr. Gress are appointed as class representatives, and Plaintiffs' counsel is appointed class counsel.

### I.    Standing

The Court begins its analysis with Article III standing.  Indeed, "[f]or a district court to certify a class action, the named plaintiffs must have standing." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1265 (11th Cir. 2009) (quotation omitted); see also Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing[.]"); Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the

certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.").

Standing is also relevant to the requirements of Rule 23.  As the Eleventh Circuit has explained, courts must "consider under Rule 23(b)(3) before certification whether the individualized issue of standing will predominate over the common issues in the case, when it appears that a large portion of the class does not have standing . . . and making that determination for these members of the class will require individualized inquiries."  Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1277 (11th Cir. 2019).

To have Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 1548 (quotation omitted).  "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." Id. (quotation omitted).  For the injury to be "concrete," it must be "real," and not "abstract"; however, it need not be "tangible." Id. at 1548–49.

The Article III standing of Scoma and Dr. Gress is not at issue.  Mastercard contends that Mussat, and likely many members who received a fax via an online fax service, did not suffer an injury in fact and thus lack Article III standing.  (Doc. 182 at 17–20.)  After careful review, the Court agrees that, at the very least, it appears that "a large portion" of the All Fax Recipients class—namely, members that received the fax via an online fax service—do <u>not</u> have standing.  <u>See</u> <u>Cordoba</u>, 942 F.3d at 1277.  As explained below, individualized inquiries would be required to identify those members and determine whether they have Article III standing, and those individualized inquiries would predominate over any common issues.  The same is true for the Online Fax Service class, which is comprised only of those who received faxes via an online fax service.

For starters, the Court finds persuasive the reasoning of other courts in this Circuit which have found that the mere receipt of a fax through an online fax service, even if in violation of the TCPA, does not cause an injury in fact. <u>See</u> <u>Muransky v. Godiva Chocolatier, Inc.</u>, 979 F.3d 917, 929–30 (11th Cir. 2020) (noting that a statutory violation does not necessarily result in an injury in fact). For example, in <u>Daisy, Inc. v. Mobile Mini, Inc.</u>, 489 F. Supp. 3d 1287, 1295–96 (M.D. Fla. 2020), the court applied <u>Spokeo</u> and reasoned that, unlike with a stand-alone fax machine, receipt of a fax via an online fax service would not occupy a fax machine or its line or impose printing costs.  Following a thorough analysis, the court found that time spent reviewing a fax had no analogue in common law causes

9

of action and that "it is clear Congress did not view one wasted minute spent reviewing a junk fax received through e-mail as a concrete injury." Id. at 1293–97.

To be sure, the Eleventh Circuit has held that "allegations of wasted time can state a concrete harm for standing purposes." See Salcedo v. Hanna, 936 F.3d 1162, 1173 (11th Cir. 2019). The court noted, however, that a harm would require "at the very least, more than a few seconds," and the analysis is "qualitative, not quantitative." Id.

Turning to Mussat, it alleges that "on or about December 18, 2015, Defendants transmitted by telephone facsimile machine an unsolicited facsimile to Plaintiff Mussat." (Doc. 55 at 5, ¶ 16.) And although Plaintiffs generally allege that "[r]eceiving the Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of the Defendants' faxes . . . [and] used the Plaintiffs' and the other class members' telephone lines and fax machine," (id. at 14, ¶ 41), Mussat acknowledges it did not receive a fax via stand-alone fax machine. (Doc. 178 at 2, ¶ 5.) As to the allegation that receipt of the fax cost Mussat "time, as [Mussat and its] employees wasted their time receiving, reviewing and routing the Defendants' unauthorized faxes," (Doc. 55 at 14, ¶ 41), Mussat does not specify the amount of time it took to receive, review, and route the one-page fax. (Doc. 55-2.)

Mussat also relies on the deposition testimony of its corporate representative. (Doc. 178 at 10–11; Doc. 159-3.) The corporate representative testified that Mussat received the fax via "Vonage eFax," which sent the fax via email or required logging

into a "portal."  (Doc. 159-3 at 6–7.)  The corporate representative further testified that Mussat "is a medical office, so there's important documents that need to be printed out," and that to ensure the office does not "miss any important documents" the company policy is that every fax "has to be printed out and placed on Dr. Mussat's desk for her review."  (Id. at 7.)  But there is no testimony indicating that the time spent printing and reviewing the one-page fax—whether it was accessed via email or the portal—was sufficient to confer Article III standing.  And Plaintiffs cite no authority in support of the proposition that voluntarily printing an emailed fax pursuant to an office policy results in an injury in fact.

Moreover, even if Mussat had Article III standing, the members of the All Fax Recipients and Online Fax Service Classes who received the fax via an online fax service may still lack it.  Indeed, although there may be circumstances where an individual who received a fax via an online fax service suffered an injury in fact, the Court would be required to determine on an individual basis whether each member read the fax, the time spent reviewing the fax, whether the fax was printed, or whether the member followed up on the fax.  Accordingly, the question of standing would predominate over the common issues of the class, and the classes cannot be certified.  See Cordoba, 942 F.3d at 1277.

11

In summary, because individualized inquiries into whether members of the All Fax Recipients and Online Fax Service Classes possess Article III standing would predominate over any common questions, the classes cannot be certified.[3]

## II.   It is necessary to determine whether a fax received via an online fax service falls under the TCPA.

Mastercard asks this Court to determine that receipt of a fax via an online fax service falls outside the scope of the TCPA and that, therefore, Mussat and putative class members who received the fax via an online fax service do not have a valid TCPA claim.  (Doc. 182 at 17–21.)  Mastercard reasons that the question of whether the fax was sent to a "telephone facsimile machine" would thus predominate over any common questions of law or fact under Rule 23(b)(3).

_____

[3] Notably, Mastercard cites no persuasive authority which has found that putative members' "statutory standing," an oftentimes merits-based inquiry unrelated to subject matter jurisdiction, is also a requirement for class certification.  See Roberts v. Hamer, 655 F.3d 578, 580 (6th Cir. 2011) (noting differences between constitutional and "statutory" standing); Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014).  Although Mastercard relies on Cordoba, Mastercard does not support its contention that the holding of Cordoba also applies to statutory standing.  (Doc. 182 at 17 n.10.)  Further, unlike in Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1289 (11th Cir. 2001), Mastercard has not filed a motion for summary judgment on Mussat's claim.

Nor does Mastercard support its contention that the Stand-Alone Fax Machine Class is an "impermissible fail-safe class because class membership is co-extensive with one of the substantive elements of the TCPA claim (receipt of the Fax on a fax machine as opposed to through an online fax service), such that membership in the class is equivalent to success on that substantive element." (Doc. 182 at 29 n.19.)  Mastercard cites no authority applying this rule to circumstances such as these.  Indeed, the cited case declined to strike the proposed class on this basis.  See Tillman v. Ally Fin. Inc., No. 2:16-cv-313-FtM-99CM, 2016 U.S. Dist. LEXIS 164997, at *13 (M.D. Fla. Nov. 30, 2016).

Perhaps recognizing this issue with the All Fax Recipients Class, Plaintiffs alternatively propose two separate classes "if the Court finds it necessary to distinguish between faxes received on a 'stand-alone' fax machine and faxes received via 'online fax service.'"  (Doc. 178 at 5.)

A district court must decide all questions of fact and law, even if "pertinent to the merits determination," that "b[ear] on the propriety of class certification." Comcast Corp., 569 U.S. at 34; see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").  As to specifically predominance, the Eleventh Circuit has explained:

> [A] question of . . . law bears on predominance if, answered one way, an element or defense will require individual proof but, answered another way, the element or defense can be proved on a classwide basis.  It does not matter whether the question also pertains to the merits; if a question of law bears on a requirement of Rule 23, then the district court must answer it.

Brown, 817 F.3d at 1237 (citations omitted).

The Court agrees with Mastercard that, as to certification of the All Fax Recipients Class, this question of law bears on predominance.  Indeed, if the Court determines that receipt of a fax via an online fax service does not fall under the TCPA, individual proof would be required to establish whether each member of the class received the fax via a stand-alone machine or online fax service.  Conversely, if the Court determines that receipt of a fax via an online fax service does fall under

the TCPA, it would be unnecessary to make the individual inquiry and the element—that the fax was sent to a "telephone facsimile machine"—could be proven on a classwide basis, for example, by the transmission log of successfully sent faxes. (See Doc. 178 at 12); cf. True Health Chiropractic Inc. v. McKesson Corp., No. 13-cv-02219-HSG, 2020 WL 7664484, at *8 (N.D. Cal. Dec. 24, 2020) (noting that in separating online and stand-alone machine classes, the court was "enab[ling] a process for identifying those who received faxes via an online fax service . . . [s]o rather than posing a threshold 'jurisdictional' issue . . . the question of whether the Online Fax Service subclass has a claim under the TCPA is simply a common merits question whose answer will be the same for all members of that subclass").

Accordingly, because the question bears on predominance, the Court must answer it. See Comcast Corp., 569 U.S. at 34.[4]

_____

[4] As discussed, a similar sort of individualized inquiry would also be required because of Article III standing concerns. Although there are thus two independent reasons requiring the inquiry, both are relevant to the same predominance analysis: whether, as to the All Fax Recipients Class, common issues will predominate over individual issues. There is nothing in Brown, Amgen, or Comcast that suggests a question of law does not "bear on" predominance where any required individualized inquiry would overlap with another inquiry. In other words, the question of whether the TCPA covers receipt of a fax via an online fax service is not moot.

Although the Court had noted that the issue of whether the TCPA covered online fax services was a common merits question and that a determination was premature, that was in the context of a motion for an additional stay pending further action on AmeriFactors by the FCC. (Doc. 176.) The Court previously acknowledged that the question "would directly implicate whether plaintiffs may satisfy commonality or predominance, and whether Mussat may serve as a class representative." (Doc. 152 at 10.)

### III.    The TCPA does not apply to receipt of a fax via online fax service.

The Court agrees with the well-reasoned analysis of the Magistrate Judge and several other courts in finding that receipt of a fax via an online fax service does not support a TCPA claim.  See, e.g., (Doc. 172 at 18–28); Licari Family Chiropractic Inc. v.  Eclinical Works, LLC, No. 8:16-cv-3461-MSS-JSS, 2021 WL 4506405, at *4–7 (M.D. Fla. Jan. 11, 2021); Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC, No. 3:16-cv-03013-JMC, 2021 WL 3022677, at *8–10 (D.S.C. July 16, 2021); Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC, No. 1:17-cv-01149-JDB-JAY, 2020 WL 4937790 (W.D. Tenn. Aug. 24, 2020); True Health Chiropractic Inc., 2020 WL 7664484.

First, the Bureau's decision in AmeriFactors is entitled to deference under the Chevron doctrine.[5]  See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984); Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1257 n.12 (11th Cir. 2015) (collecting cases that have deferred to the FCC's construction of the TCPA in reports and orders "issued without the

---

[5] The Court previously noted potential uncertainty about whether a decision by the FCC on review of AmeriFactors would bind the Court, given the concurring opinions in Gorss Motels, Inc. v. Safemark Sys., LP, 931 F.3d 1094, 1105–12 (11th Cir. 2019), and PDR Network, LLC v. Carlton & Harris Chiropractic, Inc., 139 S. Ct. 2051, 2057, 2062–66 (2019).  (Doc. 176 at 12.)  However, it is undisputed that because the AmeriFactors decision is not a "final order," the Hobbs Act does not require deference to the decision.  (Doc. 186 at 10; Doc. 178 at 3 n.4.)  Further, although the FCC issued prior final orders regarding, among other things, the meaning of a "telephone facsimile machine," AmeriFactors addressed the prior orders and determined that the technology at issue there differed from an online fax service.  2019 WL 6712128, at *2–4.

formalities of regulations").  At the outset, deference is appropriate "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that agency interpretation claiming deference was promulgated in the exercise of that authority."  Palm Beach Golf, 781 F.3d at 1256 (quotation omitted).  The Eleventh Circuit has found that Congress "delegated to the FCC authority to promulgate binding legal rules to carry out the provisions of the TCPA."  Id.  (quotation omitted).  Additionally, the Eleventh Circuit has held that an order issued under "delegated rulemaking authority" by the Bureau has the "same force and effect of the Commission."  Gorss Motels, Inc., 931 F.3d at 1104 (citing 47 C.F.R. § 0.203(b)).

The Supreme Court of the United States further explains:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions.  First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute . . . .  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, 467 U.S. at 842–43.

Here, the first step in the analysis is satisfied because Congress has not "directly spoken to the precise question at issue" and its intent is not clear.  See id.

Indeed, as other courts have recognized, Congress did not define "any of the . . . terms used in the definition of a telephone facsimile machine, and the ordinary definitions of those terms do not shed light on whether an online fax service is included in that definition." <u>Advanced Rehab</u>, 2020 WL 4937790, at *5.[6]  And online fax services did not exist when the TCPA was enacted.  <u>Id.</u>

Second, the FCC's determination is "based on a permissible construction of the statute."  <u>See</u> <u>Chevron</u>, 467 U.S. at 843.  In determining that online fax services fall outside the scope of the TCPA, the FCC sought comments from the community, reviewed an extensive record, and concluded that Congress intended to protect against harms associated with the use of equipment that had the capacity to print. <u>AmeriFactors</u>, 2019 WL 6712128, at *2–4 (citations omitted); <u>see</u> <u>Palm Beach Golf</u>, 781 F.3d at 1257 (noting that Congress sought to limit injuries relating to "costs of advertising . . . [on] the recipient" and "occupation of the recipient's facsimile machine" (citations and some alterations omitted)).  The Bureau further reasoned that, under the plain terms of the TCPA, an online fax service does not constitute a "telephone facsimile machine."  <u>AmeriFactors</u>, 2019 WL 6712128, at *3.  And while Congress "made clear that the proscription applies when such a fax is sent <u>from</u>" devices other than a telephone facsimile machine, Congress expressly narrowed the

---

[6] The statute defines "telephone facsimile machine" as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."  47 U.S.C. § 227(a)(3).

equipment <u>to which</u> it is prohibited to send an unsolicited fax.  <u>Id.</u>  The Court finds this determination based on a permissible construction of the statute.

Moreover, even if <u>Chevron</u> deference did not apply, <u>AmeriFactors</u> would still be persuasive, as the decision is well-reasoned, based on a voluminous record, consistent with earlier and later pronouncements, and decided by the agency with the requisite expertise.  <u>See</u> <u>Martin v. Soc. Sec. Admin., Comm'r</u>, 903 F.3d 1154, 1159 (11th Cir. 2018) (citation omitted).  Indeed, the FCC has since reaffirmed that interpretation.  <u>See</u> <u>In the Matter of Joseph T. Ryerson & Son, Inc. Pet. for Expedited Declaratory Ruling</u>, No. 02-278, 05-338, 2020 WL 5362216, at *4 (OHMSV 2020) ("[W]e reiterate that transmissions that are effectively email do not implicate the consumer harms Congress sought to address in the TCPA, such as tying up phone/fax lines and the unnecessary use of paper and toner/ink from automatic printing.").

Next, because the faxes here were received before <u>AmeriFactors</u> was decided, it is necessary to determine whether the decision applies retroactively.  As noted by the previously assigned judge, the decision's retroactivity depends on whether the decision is rulemaking or a clarification.  (Doc. 152 at 10); <u>Heimmermann v. First Union Mortg. Corp.</u>, 305 F.3d 1257, 1260 (11th Cir. 2002) (finding "no problem with the retroactive application of [rulings]" that are "clarifications of existing law and not new rules or regulations").  First, "[w]hile not dispositive, an agency's determination that a new statement is a clarification of existing law, rather than an

entirely new rule, is generally given much weight." <u>Heimmermann</u>, 305 F.3d at

1260.  The Bureau expressed multiple times in <u>AmeriFactors</u> that it was offering

"clarification" on the issue of whether online fax services are subject to the

TCPA.  2019 WL 6712128, at *2–3.

Additionally, "a rule simply clarifying an unsettled or confusing area of the

law . . . does not change the law, but restates what the law according to the agency

is and has always been[.]" <u>Heimmermann</u>, 305 F.3d at 1260 (quoting <u>Pope v.

Shalala</u>, 998 F.2d 473, 483 (7th Cir. 1993)); <u>see also</u> <u>Qwest Servs. Corp. v. F.C.C.</u>,

509 F.3d 521, 537-39 (D.C. Cir. 2007) (noting that the FCC is authorized to issue a

declaratory ruling "to terminate a controversy or remove uncertainty").

Here, the Bureau intended to "remove uncertainty" as to whether online fax

services fell within the scope of the TCPA and concluded that there was "sufficient

controversy or uncertainty . . . to justify issuing a declaratory ruling" and that the

issues raised by the commenters "support clarification of this issue." <u>AmeriFactors</u>,

2019 WL 6712128, at *3.  And as explained, <u>AmeriFactors</u> is consistent with the

FCC's prior rulings.  <u>See, e.g.</u>, <u>Licari Family Chiropractic Inc.</u>, 2021 WL 4506405, at

*7 (applying <u>AmeriFactors</u> retroactively due in part to consistency with prior

rulings).[7]  Upon review and in consideration of <u>AmeriFactors</u>, the Court finds that

the TCPA does not cover receipt of a fax via an online fax service.

---

[7] To the extent it is necessary to determine whether there is any "manifest
injustice" by applying <u>AmeriFactors</u> retroactively, <u>see</u> <u>Qwest Servs. Corp.</u>, 509 F.3d
at 535–39, the Court finds there is none.  The Court acknowledges that the Sixth

**IV.     The All Fax Recipients and Online Fax Service Classes cannot be
certified because common issues do not predominate over
individual issues.**

To satisfy the predominance requirement of Rule 23(b)(3), Plaintiffs must

show that "the issues in the class action that are subject to generalized proof and

thus applicable to the class as a whole, must predominate over those issues that are

subject only to individualized proof." Babineau v. Federal Exp. Corp., 576 F.3d

1183, 1191 (11th Cir. 2009) (citation omitted).  "Common issues of fact and law

predominate if they have a direct impact on every class member's effort to establish

liability . . . [and] will not predominate over individual questions if, as a practical

matter, the resolution of an overarching common issue breaks down into an

unmanageable variety of individual legal and factual issues." Id. (internal

quotation marks, brackets, and citations omitted).  Courts should examine the

claims, defenses, relevant facts, and applicable substantive law.  Id.

As to the All Fax Recipients and Online Fax Service Classes, although the

members' claims relate to similar fax transmissions, the common issues do not

predominate.  As to the All Fax Recipients, and as discussed above, individualized

inquiries would be required to determine whether each member received a fax via a

stand-alone machine or online fax service.  Such inquiries would be necessary for

---

Circuit declined to defer to AmeriFactors in Lyngaas v. Ag, 992 F.3d 412, 427 (6th
Cir. 2021).  There, however, no party had mentioned AmeriFactors, and the Sixth
Circuit's analysis of retroactivity did not focus on decisions that are merely
clarifications.  See id.

two independent reasons: (1) as a threshold question of whether each member has Article III standing; and (2) because only those who received a fax via a stand-alone machine could potentially have a valid TCPA claim, and thus the element of receipt on a "telephone facsimile machine" would not be subject to classwide proof.

The Article III standing inquiry would require further analysis of, among other things, whether the member read the fax, how long it took that member to read the fax, and whether there were any other potential bases to support an injury in fact. These potentially complex individualized inquiries would dwarf the common issues among the class. As to the Online Fax Service Class, the same individualized standing analysis would predominate over the common issues. Accordingly, Plaintiffs have not established predominance as to either class, and the classes cannot be certified.[8]

## V.   Certification of the Stand-Alone Fax Machine Class is appropriate.

As to the Stand-Alone Fax Machine Class, Mastercard does not dispute, and the Court agrees, that Plaintiffs have satisfied Rule 23(a)'s prerequisites.[9] As to

---

[8] Nor does it appear that Plaintiffs have established that a class action is superior to other forms of resolution as to the All Fax Recipients and Online Fax Service Classes. As the Eleventh Circuit has observed, a "lack of predominance . . . effectively ensures that, as a substantive matter, a class action is almost certainly not superior to other available methods for fairly and efficiently adjudicating the controversy." Vega, 564 F.3d at 1278 n.18. Upon review of the relevant factors, Plaintiffs have not shown that a different outcome is warranted here.

[9] The Court agrees with the Magistrate Judge well-reasoned analysis as to the Rule 23(a) prerequisites. (Doc. 172 at 44–48.) Indeed, there were 381,011 faxes

Rule 23(b), Plaintiffs seek certification under Rule 23(b)(3), which requires predominance and superiority. The Court will address these requirements in turn, beginning with a brief discussion of administrative feasibility and Plaintiffs' proposed method to identify class members.

### a. Administrative Feasibility

In recommending that the Court not certify the Stand-Alone Fax Machine Class, the Magistrate Judge found that Plaintiffs could not show it was administratively feasible to identify individuals who received the fax via a stand-alone fax machine, and that Plaintiffs' proposed method of identification would require individualized inquiries that would defeat the administrative feasibility components of the ascertainability requirement for class certification, as well as predominance and superiority. (Doc. 173 at 35–36, 42, 50–54.)

Following the Report and Recommendation, the Eleventh Circuit clarified that "ascertainability" merely requires that the class is adequately defined by objective criteria, and that "administrative feasibility is not a requirement for

---

sent, and nearly any percentage of that number would satisfy numerosity. See Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (generally, more than forty members is adequate). And there is more than "a single common question" capable of classwide resolution, such as whether Mastercard "sent" the faxes. See Carriuolo v. Gen. Motors Co., 823 F.3d 977, 984 (11th Cir. 2016) (citation omitted). There is also a sufficient nexus between the legal claims of the putative members and Scoma and Dr. Gress as the claims relate to the same unsolicited faxes. See Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir. 2012). Lastly, there are no substantial conflicts of interest between the representatives and the class, and Scoma and Dr. Gress are adequate representatives to prosecute the action. See Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1323 (11th Cir. 2008).

certification under Rule 23." <u>Cherry</u>, 986 F.3d at 1302–04.  However, administrative feasibility "remains relevant to whether a proposed class may proceed under Rule 23(b)(3)" and is relevant to Rule 23(b)(3)(D)'s "manageability" factor.  <u>Id.</u> at 1301–04.  "That provision requires a comparative analysis that is incompatible with a threshold, standalone administrative feasibility requirement, and the court must weigh any manageability concerns against the advantages of proceeding as a class action."  <u>Rensel v. Centra Tech, Inc.</u>, 2 F.4th 1359, 1369 (11th Cir. 2021) (quotation omitted).[10]

Here, the putative members of the Stand-Alone Fax Machine Class are ascertainable.  In other words, the class is defined by objective criteria, and the members are identifiable.  Further, as it relates to Rule 23(b)(3)(D)'s manageability factor, which is but one factor in a balancing analysis, the Court finds that any

---

[10] As the Eleventh Circuit explained:

> A district court must evaluate this issue in comparative terms; that is, because the superiority requirement of Rule 23(b)(3) turns on whether a class action is better than other available methods of adjudication, it involves two forms of comparison. First, would a class action create more manageability problems than its alternatives? And second, how do the manageability concerns compare with the other advantages or disadvantages of a class action? Administrative feasibility alone will rarely, if ever, be dispositive, but its significance will depend on the facts of each case.

<u>Cherry</u>, 986 F.3d at 1304–05 (citations omitted).

difficulties in identifying membership of the Stand-Alone Fax Machine Class do not

outweigh the factors that countenance in favor of class certification.

Plaintiffs propose a three-step process to identify individuals who received

faxes via a stand-alone machine:

1. Subpoena the Local Number Portability Administrator ("LPNA") of the Number Portability Administrative Center ("NPAC") to identify the carriers of the phone numbers that received faxes during the relevant date range.[11]

2. Use the response to the first subpoena to serve a second round of subpoenas on the identified phone carriers to identify the subscriber of each phone number.

3. Designate for the Stand-Alone Fax Machine Class all subscribers that are not an online fax service provider, such as Vonage eFax.

(Doc. 178 at 30–31.)  Other courts have approved of this process in TCPA cases.

See, e.g., Physicians Healthsource, Inc. v. Stryker Sales Corp., No. 1:12-cv-729, 2014

WL 11429029, at *1 (W.D. Mich. Feb. 20, 2014); True Health Chiropractic Inc., 2020

WL 7664484, at *8.  At the very least, the proposed process is "a starting point from

which" Plaintiffs can use other methods if necessary, such as "self-identifying

affidavits and subpoenas."  Reyes v. BCA Fin. Servs., Inc., No. 16-24077-CIV-

Goodman, 2018 WL 3145807, at *13 (S.D. Fla. June 26, 2018); see also Chicago Car

Care Inc. v. A.R.R. Enter., Inc., No. 19-cv-07687, 2021 WL 1172262, at *6 (N.D. Ill.

Mar. 29, 2021) (finding that "there is no reason to conclude that complex

---

[11] The NPAC maintains a database of phone numbers and facilitates portability of phone numbers between carriers, and the LPNA manages the NPAC. See In re Neustar Sec., 83 F. Supp. 3d 671, 674–75 (E.D. Va. 2015).

individualized inquiries are needed to determine whether or not class members

used online fax services," and that "[o]ne option is to just ask, using affidavit-based

proof").[12]   In all events, any manageability concerns here are insufficient to render

class certification inappropriate, since all other factors militate in favor of

certification.  See Cherry, 986 F.3d at 1305 (noting that "[a]dministrative feasibility

alone will rarely, if ever, be dispositive").  In all events, the Court retains the

"discretion to decertify a certified class that turns out to be unmanageable."  Id. at

1304 (citation omitted).

  b.  Predominance

  Here, common issues of fact and law as to the Stand-Alone Machine class

predominate.  The overriding common question, which can be decided classwide, is

whether Mastercard sent the faxes as prohibited by the TCPA.  47 U.S.C. §

---

[12] Mastercard relies on Career Counseling, 2021 WL 3022677, at *12, for the proposition that individualized inquiries would be required as to each class member "to determine if the fax number identified in the fax log actually was linked to a stand-alone fax machine" on the date sent.  (Doc. 187 at 1–2.)  Further, in questioning whether carriers and, in effect, Plaintiffs will be able to discern between users of stand-alone fax machines and online fax service providers, Mastercard relies on evidence presented in Career Counseling, not here.  (Doc. 182 at 26, 34; Doc. 186 at 19.)  In all events, the court in Career Counseling denied class certification based on ascertainability and administrative feasibility.  As the Eleventh Circuit noted in Cherry, the Fourth Circuit requires proof of administrative feasibility for certification.  Cherry, 986 F.3d at 1302 (citing EQT Prod. Co. v. Adair, 764 F.3d 347, 358–59 (4th Cir. 2014)).  Mastercard also observes that the number of putative members here is considerably greater than in cases where Plaintiffs' proposed method has been attempted.  (Doc. 182 at 32–33.)  But just because identifying the members might be more difficult where there are more of them does not mean that class certification is inappropriate.

227(b)(1)(C); <u>see also</u> 47 C.F.R. § 64.1200(f)(10).[13]  Additional common questions might include whether the faxes are "advertisements," whether they satisfy the TCPA's notice requirements, and whether they were sent using a "telephone facsimile machine, computer, or other device."  <u>See</u> 47 U.S.C. § 227(b)(1)(C); <u>Advanced Rehab</u>, 2019 WL 4145239, at *10.  Additionally, calculating damages will not require much individualized inquiry since the TCPA is "relatively straightforward" as to damages.  <u>See</u> <u>C-Mart, Inc. v. Metro. Life Ins. Co.</u>, 299 F.R.D. 679, 692 (S.D. Fla. 2014).

As noted, because each member of the class received the fax via a stand-alone machine, the element of receipt of a fax on a telephone facsimile machine could likely be proven by classwide evidence.  It would also be unnecessary to engage in a lengthy, individualized Article III standing analysis, and any manageability concerns relating to discovery or requiring affidavits from putative members are insufficient to support a finding that common questions will not predominate over individual questions.  Mastercard points to no other compelling legal or factual issues that would require individualized determinations.  In summary, and following the Eleventh Circuit's guidance in <u>Cherry</u>, the Court finds that the

---

[13] Mastercard previously moved to dismiss the complaint, arguing that it did not "send" the faxes.  (Doc. 65.)  The previously assigned judge denied the motion because Plaintiffs "adequately alleged a theory of strict liability against MasterCard as a 'sender' of the junk faxes."  (Doc. 79 at 10.)

questions of law or fact common to class members predominate over any questions affecting only individual members.

   c.   Superiority

   Plaintiffs have also shown that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  "Superiority" addresses "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." Klay v. Humana, Inc., 382 F.3d 1241, 1269 (11th Cir. 2004).  Courts often find that, given the "prevalence of class-wide issues," a class action is the superior way to resolve TCPA claims.  See, e.g., Palm Beach Golf Ctr.-Boca, Inc. v. Sarris, 311 F.R.D. 688, 699 (S.D. Fla. 2015).

   As an initial matter, the Court has already determined that common issues predominate over individual issues as to the Stand-Alone Fax Machine Class. See Klay, 382 F.3d at 1273 ("[W]here a court has already made a finding that common issues predominate over individualized issues, we would be hard pressed to conclude that a class action is less manageable than individual actions.").  Second, the Court agrees with Plaintiffs that class members may have little incentive to sue individually, and that, given the number of potential members of the Stand-Alone Fax Machine Class, judicial efficiency is best served by adjudicating all claims in one proceeding.  See Carriuolo, 823 F.3d at 989 (finding superiority where individual claims had low economic value).  And, given the lack of other related

27

suits against Mastercard and the age of the case, there is no indication that putative class members have a strong interest in controlling the prosecution. See Liu v. OP Realty Partners, LLC, No. 6:19-cv-2041-Orl-31LRH, 2020 WL 10354013, at *3 (M.D. Fla. Oct. 27, 2020).

Lastly, though it may not be convenient, any manageability concerns are insufficient to support a finding that a class action is not superior to other available methods for fairly and efficiently adjudicating the controversy. See Klay, 382 F.3d at 1273 ("[W]e are not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives (including, most notably, 600,000 separate lawsuits by the class members).").

In summary, Plaintiffs have satisfied Rule 23(a) and (b)(3), and certification as to the Stand-Alone Fax Machine Class is thus warranted.

## VI.    Appointment of Class Counsel

Having found certification of the Stand-Alone Fax Machine Class appropriate, the Court turns to Plaintiffs' request for appointment as class counsel. See Fed. R. Civ. P. 23(g) ("Unless a statute provides otherwise, a court that certifies a class must appoint class counsel."). Upon careful consideration of the relevant factors, the Court appoints Plaintiffs' counsel, A + W, ECLG, and Mr. Warner as

class counsel.[14]  In doing so, the Court agrees with the reasoning of other courts that have appointed Plaintiffs' counsel as class counsel.  See, e.g., Physicians Healthsource, Inc. v. Dr. Diabetic Supply, LLC, No. 12-22330-CIV, 2014 WL 7366255 (S.D. Fla. Dec. 24, 2014) (A + W); Smith v. State Farm Mutual Auto. Ins. Co., 301 F.R.D. 284 (N.D. Ill. 2014) (ECLG); Murray v. E*Trade Fin. Corp., 240 F.R.D. 392, 398 (N.D. Ill. 2006) (ECLG); (Doc. 159-3 at 51, ¶ 10 (Mr. Warner)). Counsel's conduct in this action supports this finding.  Upon review of the relevant factors, A + W, ECLG, and Mr. Warner are appointed class counsel of the Stand-Alone Machine Class.

## VII.   Dissemination of Notice

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Although Plaintiffs have

---

[14] "Class counsel must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).  In appointing counsel, a court must consider

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1).  A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Id.

29

proposed a method to disseminate notice, the Court finds that the better course of action is to allow the parties to confer before Plaintiffs submit their proposal.  (Doc. 178); see Miles v. Am. Online, Inc., 202 F.R.D. 297, 306 (M.D. Fla. 2001) (requiring conferral).  Accordingly, the parties are directed to confer as to the content, timing, and method of notice to be given to the class.  After conferring with defense counsel, but no later than thirty days from the date of this Order, Plaintiffs shall provide for the Court's approval a proposed form and method of dissemination of notice.

<strong>CONCLUSION</strong>

Plaintiffs' Second Amended Motion for Class Certification (Doc. 178) is **GRANTED in part** and **DENIED in part**.  Plaintiffs' request to certify the All Fax Recipients and Online Fax Service Classes is denied.  Their request to certify the Stand-Alone Fax Machine Class is granted.  Scoma and Dr. Gress are appointed as class representatives, and A + W, ECLG, and Mr. Warner are appointed as class counsel.  Following conferral with defense counsel and within thirty days from the date of this Order, Plaintiffs shall file a proposed form and method of dissemination of notice.

**DONE AND ORDERED** this 23rd day of December, 2021.

_John L. Badalamenti_

**JOHN L. BADALAMENTI**
UNITED STATES DISTRICT JUDGE